**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | Criminal Case No 1:06-cr-00249-PLF |
| MICHAEL JOHN O'KEEFE, SR. and SUNIL AGRAWAL, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MR. AGRAWAL'S MOTION TO COMPEL DISCOVERY UNDER RULE 16(a)(1)(E)**

Sunil Agrawal is charged with three felony offenses for allegedly giving things of value to U.S. consular officer John Michael O'Keefe in return for his *scheduling* expedited visa interview appointments for Mr. Agrawal's STS Jewels, Inc. ("STS Jewels") employees at the U.S. consulate in Toronto, Canada. This allegation is the crux of the government's entire case. It is an allegation repeated in various forms throughout the Indictment and is central to the issue of whether Mr. O'Keefe violated his consular duties. As a result, Mr. Agrawal has requested that the government provide to his counsel information regarding the manner in which the government processes requests for expedited appointments in the U.S. consulate in Toronto and in other locations. The government has refused to provide the majority of the information. In addition, the government has refused to provide other relevant and material information.[1]

[1] The government sent letters to Mr. Agrawal on January 23 and 25, 2007. *See* 1/23/07 Ltr. from B. Johnson to T. Green **(Ex. 1)**; 1/25/07 Ltr. from B. Johnson to T. Green **(Ex. 2)**.

## I. BACKGROUND

The Indictment contains no allegations that visas issued to Mr. Agrawal's employees were improperly granted. Neither are there any allegations that Mr. Agrawal's employees were unqualified or ineligible for a visa, nor that visas were issued to terrorists or other persons that pose a threat to the national security of the United States. Instead, the government's entire case centers upon the manner in which the government handles requests for expedited visa interview appointments, both in Toronto and at other consular posts, and whether Mr. O'Keefe violated "his lawful duties" in expediting visa interview appointments for STS Jewels' employees. *See* Indictment, Count 1, ¶ 8. It is thus apparent that any trial in this case will necessarily focus on the practices and procedures for expediting visa interview appointments.

The distinction between *scheduling* an appointment for a visa interview and actually *issuing* a visa is not subtle or inconsequential. In particular, in every instance, a STS Jewels' employee who received an expedited visa interview appointment was clearly eligible to obtain a U.S. visa when he visited Toronto. In other words, long before any visa appointments were made or expedited in Toronto, the United States Bureau of Citizenship and Immigration Services ("CIS") (formerly INS) had legally authorized and approved each of the visa applicants to work for Mr. Agrawal's company in the United States.[2] First, CIS's approval of an

---

[2] Authorization to work in the United States under H-1B non-immigrant status involves two separate processes: (1) H-1B classification, adjudicated by CIS, and (2) issuance of the H-1B visa, or visa stamp, issued at a consular post abroad. Upon favorable review of the petition for H-1B classification, CIS issues an H-1B approval notice (Form I-797) that makes the employee eligible to work for the U.S. petitioner company.

The Department of State H-1B visa stamp that is placed in an employee's passport is not required for work *per se*. Instead, the H-1B visa stamp is simply a travel document that the foreign national must present for admission into the United States, whether that person is entering the United States for the first time or after traveling abroad. Although an employee's H-1B status may be valid for several years, his or her H-1B visa may be valid for a shorter period. Most foreign nationals need a valid, unexpired H-1B visa every time they seek to enter the United States in H-1B status. Thus, an employee with an expired visa will have to secure a new H-1B visa if that employee intends

(continued)

individual's immigration status (*e.g.*, H-1B status) constitutes *prima facie* evidence to the State Department of that person's approvability for an entry visa. A consular officer does not have a basis to deny a visa to a CIS-approved applicant absent legitimate security or admissibility concerns.

Second, while the Indictment alleges that Mr. O'Keefe expedited over 20 visa interview appointments for employees of Mr. Agrawal's company, there is no allegation—and indeed there can be none—that any employee receiving an expedited visa interview appointment raised any type of security or admissibility concern. Indeed, even post-Indictment, CIS has not revoked the immigration status for any of these individuals. Many, if not all, of these individuals are still present in the United States and travel abroad regularly. They are subject to inspection (including questioning) every time they re-enter the United States, and their names are checked in government databases each time they re-enter the United States. If there were any problem with any of these individuals' status or admissibility, it would have been immediately apparent during the inspection process.

Third, and as so aptly put by the government, an "expedited visa interview[] ... is not essential to the determination of whether or not the visa is issued. It only affects how fast a person can see someone at the consulate." 1/23/07 Ltr. from B. Johnson to T. Green, at 9 **(Ex. 1)**. Once at the consulate, the STS Jewels' employees observed the same procedures as other applicants. They waited in line at the consulate for hours; underwent rounds of interviews and consular review of their paperwork; were fingerprinted; and underwent security and

---

to leave the United States and then re-enter. However, when an H-1B visa expires, it does not affect the foreign national's ability to work in the United States.

CIS approval of H-1B status is *prima facie* evidence of approvability for a visa. A consular officer does not have any basis to refuse issuance of a visa if the applicant (1) has an approved H-1B petition from CIS (Form I-797); (2) is not subject to any grounds of inadmissibility, including criminal convictions, health issues, security problems, or past immigration violations; and (3) has presented all necessary forms and documentation for the visa.

admissibility checks in the relevant State Department databases and systems (this process comprises the "visa interview appointment"). Mr. Agrawal's employees did not receive any special treatment in the adjudication of their visa application.

Because this entire case focuses on the administrative *timing* and *scheduling* of the visa interview appointments, rather than any substantive visa adjudication, it is essential that the defense be allowed discovery regarding the actual manner in which the government processes expedited appointment requests. The Indictment essentially alleges that Mr. Agrawal's employees received special or preferential treatment from Mr. O'Keefe, *see* Indictment, Count 1, ¶¶ 9B, 10C, but it is impossible to establish whether they received "special" or "improper" treatment without fully understanding the normal treatment of expedited visa interview requests.

Here, the defense intends to show that expedited interview appointments were routinely granted in Toronto and elsewhere, and that, at best, the procedures for handling requests to expedite visa interview appointments were *ad hoc*, amorphous, unsystematic, and subject to a large amount of discretion. Already, the government has corroborated this fact in its response to our discovery requests. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 4, 5, 9 **(Ex. 1)**. As a result, and putting aside other defenses Mr. Agrawal may have, the discovery requested by the defense bears directly upon the issue of whether such non-substantive, administrative, clerical, and ministerial acts can even constitute an "official act" under the bribery statute.

In addition, the defense intends to show that over the years the Toronto consulate became known as a "pro-expediting" consulate that was frequently utilized by businesses, movie stars, athletes, and others having a need to secure a visa quickly—*i.e.*, without waiting

"71 calendar days." *See id.*, Count 1, ¶ 4; *see also* Beppi Crosariol, *Hollywood's go-to guy*, Globe & Mail Online (October 30, 2004) **(Ex. 3)**. Requests to "move-up," "fit-in," or "expedite" visa interview appointments were accommodated whenever possible to promote U.S. business interests; to accommodate exigent circumstances; to satisfy requests from influential or famous people; or because of relationships and connections between consular officials and attorneys, other individuals, or companies. Moreover, approval of requests for expedited interview appointments was within the total discretion of the consulate and its officers. As a result, the discovery sought by the defense will help establish that there was nothing unusual or improper about scheduling expedited appointments for Mr. Agrawal's employees. *See, e.g.*, Fed. R. Evid. 406 ("Evidence ... of the routine practice of an organization ... is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice."). Such evidence will, among other things, negate or, at a minimum, undermine the existence of any *quid pro quo* between Mr. Agrawal and Mr. O'Keefe and any criminal intent on the part of Mr. Agrawal.

Furthermore, without taking time to elucidate all of the elements of Mr. Agrawal's defense, Mr. Agrawal expects that the discovery he seeks will perfectly accord with other factual defenses. For example, although not mentioned in the Indictment, Mr. Agrawal and Mr. O'Keefe have been genuine friends for some time—long predating Mr. O'Keefe's transfer to the U.S. consulate in Toronto. In fact, the two defendants have been friends going back to early 2002 when Mr. O'Keefe was the State Department desk officer for Madagascar and Tanzania. Thus, the Indictment's allegation that Mr. Agrawal and Mr. O'Keefe entered into an agreement to intentionally give and receive bribes is nothing short of fiction. There is absolutely no causal relationship between Mr. Agrawal's generosity and Mr. O'Keefe's duties at the consulate. Mr.

Agrawal gave gifts to Mr. O'Keefe out of friendship even before Mr. O'Keefe was transferred, or knew that he would be transferred, to the Toronto consulate. Mr. Agrawal had no idea Mr. O'Keefe would ever be in a position to schedule expedited visa interview appointments for his employees. In short, the defense believes that the discovery requested will demonstrate that expedited visa interview appointments were commonplace, and easily secured without resorting to bribery. This showing will corroborate the fact that Mr. Agrawal's and Mr. O'Keefe's actions were predicated on friendship; not a conspiracy to give and receive bribes.

Based on the foregoing, it is crucial that Mr. Agrawal be allowed to delve into and understand how requests for expedited appointments were handled at the Toronto consulate and other consulates. Nevertheless, the government has rebuffed the vast majority of Mr. Agrawal's requests under Rule 16(a)(1)(E), offering four principal reasons for refusing to provide the requested discovery: (1) the non-existence of responsive material; (2) the requested materials' lack of relevance and materiality to the case; (3) the burden of searching for and gathering the requested materials; and (4) privacy bars to disclosure of the requested materials.

For the reasons set forth in this memorandum, the arguments advanced by the government are wholly without merit, and in general, mischaracterize the relevant standards for disclosure under Rule 16(a)(1)(E). Responsive records do exist, and Mr. Agrawal's requests are material to his defense and pertinent to negating elements of Mr. Agrawal's bribery charges, including *inter alia*, the *quid pro quo*, "corruptly," "official act," and "lawful duty" elements of the bribery statute. *See* 18 U.S.C. § 201(a)-(b). There is no doubt that the information sought is material to Mr. Agrawal's defense. Mr. Agrawal respectfully asks that the Court grant this motion and compel the government to provide the documents and information requested in his discovery requests.

## II. MR. AGRAWAL'S DISCOVERY REQUESTS

On December 22, 2006, Mr. Agrawal, through counsel, emailed his first set of discovery requests to the government. *See* 12/22/06 Ltr. from T. Green to B. Johnson **(Ex. 4)**. The December 22 discovery letter set forth a number of requests for oral, written, and recorded statements; 404(b) evidence to be offered at trial; prompt disclosure of any *Brady, Giglio/Bagley*, and/or Jencks Act material; and several requests for documents and information material to the preparation of the defense under Rule 16(a)(1)(E).

On January 5, 2007, counsel for Mr. Agrawal emailed a second set of discovery requests to the government. *See* 1/05/07 Ltr. from T. Green to B. Johnson **(Ex. 5)**. This letter supplemented counsel's initial Rule 16(a)(1)(E) requests to include, *inter alia*, additional requests for documents and information regarding actual internal practices for administering visa interview appointments in Toronto and other consulates to which Mr. Agrawal's employees could have visited under the State Department's third-country visa processing program. The January 5 letter also provided additional specific information regarding some probable locations of responsive discovery (*i.e.*, specific email accounts). *See id.* Request 1(a).

On January 23, 2007, Assistant U.S. Attorney Brenda Johnson responded to Mr. Agrawal's discovery requests by producing a *one-page* email that contained the substance of a telephone conversation between Mr. Agrawal and a government agent sometime before August 24, 2006. *See* 1/23/07 Ltr. from B. Johnson to T. Green **(Ex. 1)**. The government further responded that other than this email it was unaware of any additional oral, written, or recorded statements of Mr. Agrawal that had not already been produced. *See id.* at 2. The government provided similar cursory responses to all of defense counsel's non-Rule 16(a)(1)(E) requests, stating that at this time it had no *Brady*, *Giglio/Bagley*, Rule 404(b), or Jencks Act materials to produce. *See id* at 11.

This discovery dispute directly centers on the government's refusal to provide documents and information that are critical to Mr. Agrawal's defense under Rule 16(a)(1)(E). The information that the government has refused to provide falls into three principal categories: (1) information regarding the expediting of consular appointments; (2) information regarding STS Jewels employees' consular appointments; and (3) information regarding the government's investigation of the defendants and the tanzanite industry. All of this information is material to the defense and within the government's possession. Set forth below are the specific Rule 16(a)(1)(E) requests that are at issue in this motion and a summary of the government's response to those requests.

### A. December 22, 2006 Discovery Letter (Ex. 4)

> ***Request 3(a)***: All Items[3] related to internal policies and procedures of the State Department and the Toronto Consulate that govern any functions formerly performed by defendant Michael O'Keefe.
>
> ***Government's Response***: The government fails to provide any documents responsive to this request. The government states that a witness from the Department of State would testify at trial regarding these issues and provides cursory narrative information regarding "the government's understanding" of internal policies and procedures. The government also states that some of the State Department's policies and procedures are publicly available. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 3-4 **(Ex. 1)**.
>
> ***Request 3(b)***: All Items related to visa applications, requests for visa interview appointments, requests for expedited visa interview appointments, and grants and/or denials thereof for STS Jewels, Inc. employees.
>
> ***Government's Response***: The government attempts to quantify the number of visa applicants associated with STS Jewels, but fails to provide documents responsive to this request based on claims of burden, immateriality, irrelevance, and privacy bars. *Id.* at 4-5.

[3] In the discovery letters, "Items" are defined pursuant to Rule 16(a)(1)(E) as "books, papers, documents, data, photographs, tangible objects .. or copies or portions of any of these items."

***Request 3(c)***: All Items related to internal policies and procedures of the various embassies and consulates, and the State Department that relate to visa interview appointments, expedited requests for visa interview appointments, and the discretion, if any, given to pertinent government personnel to either grant or deny such requests.

***Government's Response***: The government largely relies on its response to Request 3(a) and further objects to this request based on claims of burden, immateriality, and irrelevance. *Id.* at 5-6.

***Request 3(d)***: All Items related to requests for expedited visa interview appointments made to the United States consulate in Toronto, Canada, including, but not limited to, emails, faxes, letters, notes, memoranda, or other correspondence received by the consulate in Toronto, without regard to which consular officer(s) handled the request.

***Government's Response***: The government wholly objects to this request based on claims of burden, immateriality, and irrelevance. *Id.* at 6.

***Request 3(e)***: All Items related to the responses to requests for expedited visa interview appointments identified in subsection (d), whether sent to the person requesting expedited processing or to any corporation, company, or third party, and without regard to which consular officer(s) handled the request.

***Government's Response***: The government wholly objects to this request based on claims of burden, immateriality, and irrelevance. *Id.*

***Request 3(f)***: All Items showing the names of all corporations, companies, and/or individuals who were granted expedited treatment of class H visas at the following embassies and/or consulates: Montreal, Canada; Ottawa, Canada; Toronto, Canada; Vancouver, Canada; Winnipeg, Canada; Mexico City, Mexico; Ciudad Juarez, Mexico; Guadalajara, Mexico; Hermosillo, Mexico; Matamoros, Mexico; Monterrey, Mexico; Nogales, Mexico; Nuevo Laredo, Mexico; Puerto Vallarta, Mexico; and Tijuana, Mexico.

***Government's Response***: The government wholly objects to this request based on claims of burden, immateriality, and irrelevance. *Id.* at 6-7.

***Request 3(g)***: All Items from the Department of State showing statistical information—or databases and data compilations from which any statistical information may be compiled—regarding requests for expedited visa interview appointments that were made to any or all of the various United States embassies and/or consulates, including, but not limited to, information regarding the number of requests that were granted, denied, or otherwise disposed of.

***Government's Response***: The government asserts that it does not keep statistical information regarding requests for expedited interviews but fails to respond or provide information regarding databases and data compilations that contain information regarding expedited interview appointment requests. *Id.* at 7.

***Request 3(h)***: All Items from the Department of State related to information on the actual or average wait time for visa interview appointments at the various U.S. embassies and consulates (over the relevant time period).

***Government's Response***: The government objects to this request based on claims of unavailability, burden, immateriality, and irrelevance. The government asserts that some of this information is publicly available. *Id.*

***Request 3(k)***: All Items obtained by the government as the result of surveilling Sunil Agrawal, Michael O'Keefe, any STS Jewels, Inc. employee, and/or the persons referred to as "exotic dancers" in the Indictment, including identification of the dates and places of the surveillance.

***Government's Response***: The government states that it provided Mr. Agrawal with photographs and surveillance that took place from June 3, 2006 to June 6, 2006. The government fails to provide (or deny the existence of) other Items responsive to this request. *Id.* at 8.

***Request 3(l)***: Specific "information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control of" the Justice Department, the State Department, and Department of Homeland Security. *United States v. Safavian*, 233 F.R.D. 12, 21 (D.D.C. 2005). *Id.*

***Government's Response***: The government simply asserts that it "coordinated with the Legal Advisor's Office at the Department of State in an attempt to discover the scope and nature of information that exists, whether such information was easily accessible, and whether there were any legal prohibitions to providing the information requested." *Id.*

**B. January 5, 2007 Discovery Letter (Ex. 5)**

***Request 1(a)***: All Items, including, but not limited to, emails, faxes, letters, notes, memoranda, or other correspondence directed to any government employee, related to requests for expedited visa interview appointments for class B, F, H, L, M, O or P visas made by any corporation, company, or individual to the following United States embassies and/or consulates: Montreal, Canada; Ottawa, Canada; Quebec City, Canada; Toronto, Canada; Vancouver, Canada; Winnipeg, Canada; Mexico City, Mexico; Ciudad Juarez, Mexico; Guadalajara, Mexico;

Hermosillo, Mexico; Matamoros, Mexico; Monterrey, Mexico; Nogales, Mexico; Nuevo Laredo, Mexico; Puerto Vallarta, Mexico; and Tijuana, Mexico.

This request specifically includes, but is not limited to, all communications regarding or pertaining to the Items specified in the previous paragraph which were sent to or from any email address, and in particular, the following email addresses and/or other associated email addresses:

Montreal-NIV@state.gov (Montreal, Canada)
ottawaemergencyapp@state.gov (Ottawa, Canada)
quebecniv@state.gov (Quebec City, Canada)
TorontoEmpNIV@state.gov (Toronto, Canada)
Vancouverniv@state.gov (Vancouver, Canada)
cdjnivs@state.gov (Ciudad Juarez, Mexico)
visasgdl@state.gov (Guadalajara, Mexico)
hermoniv@state.gov (Hermosillo, Mexico)
Consularmatamo@state.gov (Matamoros, Mexico)
mercons@prodigy.net.mx (Merida, Mexico)
VisaMexicoEmergencia@state.gov (Mexico City, Mexico)
MonterreyEmergencias@state.gov (Monterrey, Mexico)
nogales7@prodigy.net.mx (Nogales, Mexico)
NVLVisas@state.gov (Nuevo Laredo, Mexico)
TijuanaEmergencies@state.gov (Tijuana, Mexico)

This request also includes, but is not limited to, all facsimile transmissions regarding or pertaining to the Items specified in the previous paragraph which were sent to or from any fax number, and in particular, the following fax numbers:

613-688-3082 (Ottawa, Canada)
403-263-2241 (Calgary, Canada)
514-908-3700 (Montreal, Canada)
418-692-4640 (Quebec City, Canada)
416-595-5466 (Toronto, Canada)
604-685-7175 (Vancouver, Canada)

***Government's Response***: The government wholly objects to this request based on claims of burden, immateriality, irrelevance, and privacy bars. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 9 **(Ex. 1)**.

***Request 1(b)***: All Items related to the responses to requests for expedited visa interview appointments identified in subsection (a), whether sent to the person requesting expedited processing or to any corporation, company, or third party, and without regard to which consular officer(s) handled the request.

> ***Government's Response***: The government relies upon its prior explanations, and wholly objects to this request based on claims of burden, immateriality, irrelevance, and privacy bars. *Id.* at 10.
>
> ***Request 1(c)***: All Items, including, but not limited to, autographs, photographs, electronic image or media files, and memorabilia of any kind, given to or obtained by any employee of the U.S. Consulate in Toronto, Canada, and related to visits, requests for visas, or requests for expedited visa interview appointments from any entertainment, television, movie, music, sports or other celebrity or well-known personality.
>
> This request specifically includes, but is not limited to, all autographs, photographs, electronic image or media files, and memorabilia of any kind, that were provided to or obtained by Michael Schimmel and/or any other consular official or employee of the Toronto Consulate.
>
> ***Government's Response***: The government wholly objects to this request based on claims of immateriality and irrelevance. *Id.*
>
> ***Request 1(d)***: All Items related to the Department of State's investigation into allegations regarding the tanzanite industry which were raised by the Wall Street Journal article, *Bought, Sold by Militants Near Mine, Tanzanite Ends Up at Mideast Souks* (November 16, 2001).
>
> ***Government's Response***: The government wholly objects to this request based on claims of immateriality and irrelevance. *Id.*

## III. ARGUMENT

### A. Legal Standard

Federal Rule of Criminal Procedure 16(a)(1)(E) mandates that, upon the request of a defendant, the government must disclose evidence within the government's possession, custody, or control[4] that is "material to preparing the defense" or intended by "the government. .

[4] This Court has unequivocally explained that Rule 16's mandate that the government turn over all materials and documents "within [its] possession, custody, or control" means that the government must turn over all materials within the possession, custody, or control of "all agencies and departments of the Executive Branch of the government and their subdivisions, not just the Justice Department, the FBI, . . . and other law enforcement agencies." *States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005). Possession, custody, or control also includes any other entity that is "closely aligned with the prosecution." *United States v. Libby*, 429 F.Supp. 2d 1, 11 (D.D.C. 2006). Courts in this jurisdiction deem an entity closely aligned with the prosecution when, as is the case here, the entities have cooperated in the investigation, been asked to cooperate, or the actions of the entity, or members of the entity, are the focus of part of the prosecution's investigation. *See id.* at 9-11. Moreover, government entities that employed a co-conspirator are viewed as closely aligned with the prosecution for purposes of Rule 16. *See Poindexter*, 727 F.Supp. at 1478.

. [for] use . . . in its case-in-chief." Fed. R. Crim. Pro. 16(a)(1)(E). District of Columbia courts have interpreted Rule 16 expansively, holding that the "materiality standard normally is not a heavy burden." *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal citations omitted). Rule 16 "provide[s] a criminal defendant the widest possible opportunity to inspect and receive materials … as may aid him in presenting his side of the case." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (internal citations omitted).

The D.C. Circuit has held that evidence is material to the preparation of the defense "as long as there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (quoting *Lloyd*, 992 F.2d at 351) (internal quotations omitted); *see also United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992); *United States v. Felt*, 491 F. Supp. 179, 186 (D.D.C. 1979). Material evidence is neither limited to favorable or exculpatory evidence, nor is it limited to evidence that will be admissible at trial. *See United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005); *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) ("inculpatory and exculpatory evidence may be material to the preparation of a defense to ensure that the defendant is aware of both the potential pitfalls and the strengths of his defense strategy") (internal citations omitted); *see Safavian*, 233 F.R.D. at 18 (evidence "material to the preparation of a defense" includes evidence that may only "lead to admissible evidence"); *see also Marshall*, 132 F.3d at 67 (evidence is material if there is a "strong indication that it will play an important role in *uncovering* admissible evidence") (emphasis added); *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996) (same).

Importantly, this Court has held that evidence negating or undermining the specific intent required by a criminal offense is material to the defense. *See Libby*, 429 F. Supp. 2d at 11-16; *see also United States v. Poindexter*, 727 F. Supp. 1470, 1475 (D.D.C. 1989). Moreover, evidence that can be used to impeach government witnesses is material to the defense. *See Safavian*, 233 F.R.D. at 17 (citing *United States v. Trie*, 21 F. Supp. 2d 7, 23 (D.D.C. 1998)). Furthermore, it is not appropriate for the government to speculate as to which evidence is material. *See Safavian*, 233 F.R.D. at 15 ("[T]he government cannot . . . put itself in the shoes of the defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation."). Rather, the government must construe the materiality requirement "broadly to ensure fairness to the defendant." *United States v. NYNEX Corp.*, 781 F. Supp. 19, 25 n.8 (D.D.C. 1991); *Safavian*, 233 F.R.D. at 15 (explaining that the government "cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16").

**B.   The Documents and Other Items Requested by Mr. Agrawal Are Clearly Material to His Defense.**

The Indictment is replete with references to the regulations, policies, procedures, practices, and processes involving visa appointments. *See, e.g.*, Indictment, Count 1, ¶¶ 1-6, 8-11. Indeed, the government frames the core of its case as "allegations that [Mr. Agrawal] conspired to bribe Defendant O'Keefe . . . in order to avoid established procedures and receive expedited visa appointments." 1/23/07 Ltr. from B. Johnson to T. Green, at 3 **(Ex. 1)**. Thus, the requested information is material for three reasons. First, the information is material to the factual determination of whether Mr. O'Keefe violated "established procedures" and therefore violated a "lawful duty" – an element of bribery. *See* Indictment, Count 1, ¶ 8; 18 U.S.C. § 201(b). It is also relevant to the government's allegation that Mr. Agrawal "avoid[ed]

established procedures for scheduling visa interview appointments" by some improper means. *See* Indictment, ¶ 9B. In fact, the government essentially alleges that Mr. Agrawal gained special treatment, through improper means, in order to quickly secure visas for his employees. *See, e.g.*, Indictment, ¶¶ 9B, 10C. The requested information is directly material to whether this was in fact the case.[5] Second, the information is necessary to determine whether Mr. O'Keefe was in fact performing any "official act" – a key element of bribery – in granting expedited appointments to STS Jewels' employees. *See* 18 U.S.C. § 201(b). Indeed, the government itself appears to agree with the defense that scheduling appointments was a mere clerical task. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 9 **(Ex. 1)** (consulates "may or may not keep records … regarding requests for expedited visa interviews because the reason for the request is not essential to the determination of whether or not the visa is issued. It only affects how fast a person can see someone at the consulate."). Mr. Agrawal did not believe or know that Mr. O'Keefe was performing any "official act." And, evidence negating or undermining the specific intent required by a criminal offense is material to the defense. *See Libby*, 429 F. Supp 2d at 11-16; *see also United States v. Poindexter*, 727 F. Supp. 1470, 1475 (D.D.C. 1989). Third, the information is material to the impeachment and cross-examination of the government's witnesses. *See Safavian*, 233 F.R.D. at 17. The government asserts that it will present a fact witness at the trial who will testify about the visa processes. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 3-4 **(Ex. 1).** In addition, the government recently identified an expert witness who will testify regarding "such topics as a definition of visas in general and non-immigrant visas in particular; a description of the different types of visas. . . .; the documents used to apply for

[5] The defense has developed preliminary information suggesting that the U.S. consulate in Toronto routinely expedited visa appointments for celebrities, well-known businessmen and companies, and individuals and companies known to consular officials. Moreover, this practice was followed in many other consular offices during the time frame covered by the Indictment.

visas; visa application procedures; and the visa referral expedited appointment systems." 1/23/07 Ltr. from B. Johnson to T. Green, at 3-4 **(Ex. 1)**. As a result, the requested information is material to these witnesses' cross-examination.

**1. The Government's Objections are Based on a Flawed "Relevancy" Analysis.**

The government attempts to avoid its obligation to produce the requested information by arguing that information is essentially not "relevant." 1/23/07 Ltr. from B. Johnson to T. Green, at 5, 9. In fact, the government directs the defense to Rule of Evidence 401, which defines "relevance" for admissibility purposes. *See id.* at 5-6. Rule 16(a)(1)(E), however, imposes a "materiality" requirement, not a relevancy requirement. *See* Fed. R. Crim. P. 16(a)(1)(E). And the "materiality" standard is broader. This is so because Rule 16(a)(1)(E) is designed to uncover not only evidence that is admissible but also documents and other items that may only "lead to admissible evidence." *Safavian*, 233 F.R.D. at 18. Put another way, if the defense makes a "specific request," the government is obligated to turn over "seemingly irrelevant material." *United States v. McCrory*, 930 F.2d 63, 69 (D.C. Cir. 1991).

Even if relevancy were the proper standard, the defense has shown that the requested documents and items are relevant. "The relevance requirement is not a stringent one—the proffered evidence must only have 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *United States v. Johnson*, 92 Fed.Appx. 801, 802 (D.C. Cir. 2004) (quoting Fed. R. Evid. 401). Moreover, the evidence might bear on the accuracy and truth of the government's witnesses. Such evidence is always relevant. *See United States v. Abel*, 469 U.S. 45, 52 (1984).

**2. The "Burden" on the Government is Not Relevant to Rule 16's Standard.**

The government makes the repeated assertion that searching for information responsive to Mr. Agrawal's request will involve the "burden of having to hand search and copy files." 1/23/07 Ltr. from B. Johnson to T. Green, at 5, 6, 9 **(Ex. 1)**. A burden it asserts "is very high." *Id.* This is irrelevant. Prior to 1975, Rule 16 mandated discovery only when the items sought were material to the defense *and* the discovery request was reasonable. *See* Wright & Miller, *Federal Practice and Procedure* § 254 (3d ed. 2000). Under the old rule, the reasonableness requirement served as a limit on discovery similar to the civil discovery limitation regarding overly burdensome requests. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). However, after 1975, Rule 16 does not require that the request be "reasonable." *See Federal Practice and Procedure* § 254.

In any event, the burden on the government should not be significant. The requests are narrowly worded. The information is uniquely within the government's possession and control. And the government has substantial resources at its disposal including tools to search electronic information.[6]

---

[6] The government has used such tools to provide the defense with information regarding STS Jewels' employees. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 5 **(Ex. 1)** (explaining that the government has used "specialized computer software (Encase and FTK) … [to] search[] for keywords" that occurred in Mr. O'Keefe's email files). As a result, an efficient way in which to cull some of the responsive records is to identify particular email accounts and use keywords to search and sort those documents. The proposed order contains a list of proposed keyword search terms. The discovery provided to date (from Mr. O'Keefe's computer) demonstrates that internal email communications regarding expedited appointments are likely to exist at the various consular posts. Thus, we suggest that the government search the email accounts listed in the January 5, 2007 discovery letter **(Ex. 5)**, in addition to other related accounts, and other likely sources of responsive information, including, but not limited to, the email accounts of all the non-immigrant visa chiefs and deputy chiefs at the respective posts.

Furthermore, the government should not be excused from searching hard-copy files in which responsive documents are likely to exist. The government has demonstrated its ability to locate such documents in the discovery that it has provided to date. In particular, in the discovery provided on December 7, 2006, the government provided copies of expedited appointment request faxes sent from STS Jewels, Inc. and a copy of the "blue sheet" (apparently a pre-printed blue adhesive note) used by the Toronto consulate to approve expedited visa interview appointments **(Ex. 6)**. It appears these "blue sheets" were affixed to the visa applications and appointment documents and used to

(continued)

### 3. Section 222(f) of the Immigration and Nationality Act Does Not Bar Disclosure of the Requested Materials.

The government argues that Section 222(f) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1202(f) prevents the disclosure of the information. The government is wrong. First, Section 222(f) of the INA only applies to documents "pertaining to the *issuance or refusal* of visas or permits to enter the United States." 8 U.S.C. § 1202(f) (emphasis added). The defense has only requested information regarding the expediting of visa appointments. Indeed, the government admits that records regarding expedited visa interview appointments do not pertain to the "issuance or refusal of visa." 1/23/07 Ltr. from B. Johnson to T. Green, at 9 **(Ex. 1)** ("the [expedited request]. . . is not essential to the determination of whether or not the visa is issued"). Second, even if the information is confidential, under Section 222(f), the court can order the information produced if it concludes that it is material to Mr. Agrawal's defenses. *See* 8 U.S.C. § 1202(f); *Maizus v. Weldor Trust Reg.*, 144 F.R.D. 34 (S.D.N.Y. 1992); *United States v. Carron*, 541 F.Supp. 347 (W.D.N.Y. 1982). Consequently, Section 222(f) is not a bar to the government's production of the requested information.

### C. The Government has Failed to Adequately Respond to Several Requests.

The government has not responded to several important requests. First, the defense requested statistical information or databases and data compilations regarding requests for expedited visa requests. *See* 12/22/06 Ltr. from T. Green to B. Johnson, at 4 **(Ex. 4)**. The government responded to the first request for statistical information, but failed to respond in any way to the second request for databases or data compilations. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 7 **(Ex. 1)**. Second, the defense requested all items obtained by the government as

---

identify whether an expedited appointment had been approved. The existence of these colorful notes makes a search of the hard-copy files highly efficient.

the result of surveilling Mr. Agrawal, Mr. O'Keefe, any STS Jewels employee, and/or the persons referred to as "exotic dancers"[7] in the Indictment. *See* 12/22/06 Ltr. from T. Green to B. Johnson, at 4 **(Ex. 4)**. The government partially responded to this request by stating that it had turned over some photographs and video. However, it is unclear whether the government turned over all the photographs and video. *See* 1/23/07 Ltr. from B. Johnson to T. Green, at 8 **(Ex. 1)**. Lastly, the defense requested information from January 1, 2004 through the present. *See* 12/22/06 Ltr. from T. Green to B. Johnson, at 3 **(Ex. 4)**. The government limited its response to "up to [Mr. Agrawal's] arrest in August, 2006." 1/23/07 Ltr. from B. Johnson to T. Green, at 3, 5 **(Ex. 1)**. The government's time limitation is arbitrary and will deny Mr. Agrawal access to material evidence. For instance, upon information and belief, the defense understands that around the time of the Indictment, the Toronto consulate made significant policy, procedure, and practice changes with respect to processing expedited visa interview requests and approvals. This information will help establish that during the time frame covered by the Indictment, there were no standard policies or procedures that were violated by the defendants. In addition, this information is necessary to the cross-examination of government witnesses.

[7] Importantly, Mr. Agrawal had absolutely no knowledge or reason to know that the persons referred to in the Indictment as "exotic dancers" were exotic dancers. Mr. O'Keefe introduced these individuals to Mr. Agrawal and other STS Jewels employees as college students and interns working at the U.S. consulate in Toronto. Mr. Agrawal had extremely limited discussions with these individuals on only a few occasions and in the presence of other STS Jewels employees. As a result, Mr. Agrawal intends to file motions in limine to prevent the severe prejudice that would ensue to him by the repeated—and irrelevant—references to these individuals at trial.

## IV. CONCLUSION

For the foregoing reasons, Mr. Agrawal respectfully requests that the Court grant his Motion to Compel.

Dated: January 30, 2007

Respectfully submitted

Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
Juan P. Morillo (D.C. Bar #475196)
David J. Ludlow (D.C. Bar #489136)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
202-736-8000