UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 06-0249 (PLF) |
| | ) | |
| MICHAEL JOHN O'KEEFE, SR. | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUNIL AGRAWAL, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

MEMORANDUM OPINION AND ORDER

       This matter is before the Court on the motion of defendant Sunil Agrawal to compel discovery under Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. Co-defendant Michael John O'Keefe, Sr., has joined the motion to compel, and the motion has been fully briefed. The Court heard oral argument on March 22, 2007.

       Defendant O'Keefe, an employee of the United States Department of State, worked as a consular officer at the U.S. Consulate in Toronto, Canada. Defendant Agrawal is the chief executive officer of STS Jewels, Inc. The indictment alleges that visa applications were submitted to the Toronto Consulate on behalf of STS Jewels-affiliated persons, that defendant Agrawal requested defendant O'Keefe to expedite the treatment of these applications, that O'Keefe granted expedited visa appointments for STS Jewels-affiliated persons contrary to policy and established procedures, and that Agrawal provided O'Keefe with gifts and other personal benefits as a quid pro quo for this favorable treatment. The defendants are charged with conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and with the giving (Agrawal) and

receipt (O'Keefe) of bribes, in violation of 18 U.S.C. § 201(b)(1) and (2). The bribery statute requires proof that the accused acted "corruptly" in giving, receiving or demanding a bribe, and with the "intent . . . to influence" (or be influenced in the performance of) an "official act." <u>See</u> 18 U.S.C. § 201(b)(1) and (2).

Defendants argue that the discovery requested is "material" to the preparation of their defenses within the meaning of Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure -- specifically, that there was no "official act" as a matter of law and that the defendants did not have the requisite criminal intent as a matter of fact. Defendants maintain that the requested discovery will show either that there was no established policy or procedure regarding expediting visa applications or that it was the routine practice to violate or disregard the policy. They say that nothing unorthodox happened in this case because visa applications were routinely expedited in consulates in Toronto and in other parts of Canada and Mexico, and that expediting was so routine that the decision whether to expedite was delegated even to non-official, clerical personnel. Obtaining documents through discovery to show these facts, defendants maintain, will undercut any evidence offered by the government concerning the formality of the process as suggested by the indictment. Defendant Agrawal does not deny that he gave gifts to defendant O'Keefe, but maintains that the gifts were given out of friendship and not as a quid pro quo; the routine nature of the expedition process, he argues, supports this defense and will undercut the government's ability at trial to show corrupt or otherwise criminal intent.

The government responds that the items requested do not meet the test for materiality under Rule 16, that the discovery requests are overbroad, that the searches required to respond to these overbroad requests -- both electronic and manual -- would be time-consuming,

burdensome and logistically difficult, and that the requests implicate the privacy rights both of other employees and of visa applicants, citing a provision of the Immigration and Nationality Act, 8 U.S.C. § 1202(f), that requires confidentiality for State Department and consular office files relating to the issuance or refusal of visas.

As this Court has noted on other occasions, "the government cannot take a narrow reading of the term 'material' in making its decisions on what to disclose under Rule 16. Nor may it put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation." *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005). And burdensomeness and logistical difficulty -- while factors to be considered both by defendants in framing discovery requests and by courts in resolving discovery disputes -- cannot drive the decision whether items are "material" to preparation of the defense. Nor can concerns about confidentiality and the privacy rights of others trump the right of one charged with a crime to present a fair defense. Indeed, the statute on which the government relies itself suggests procedures for the use of confidential information under the Immigration and Nationality Act where it is needed by a court in a case pending before it "in the interest of the ends of justice." 8 U.S.C. § 1202(f)(1).[1] Protective orders in criminal cases are not uncommon,

---

[1]     The statute provides:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that . . . in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

and the Federal Rules of Criminal Procedure provide that "[a]t any time the court may, for good

cause, deny, restrict, or defer discovery or inspection, *or grant other appropriate relief*." *See*

FED. R. CRIM. P. 16(d) (emphasis added); *see also* CHARLES ALAN WRIGHT, 2 *Federal Practice*

*and Procedure* § 258 (3d ed. 2000) ("The discretion provided by Rule 16(d)(1) is vast.").

Protective orders are expressly designed to assure that a defendant's right to a fair trial are not

overridden by the confidentiality and privacy interests of others. *See*, *e.g.*, *United States v. Libby*,

453 F. Supp. 2d 35, 37 (D.D.C. 2006) (discussing procedures under the Classified Information

Procedures Act).

       As Judge Sentelle said for the D.C. Circuit in *United States v. Marshall*, 132 F.3d

63, 67, (D.C. Cir. 1998), Rule 16(a)(1)(E) (formerly Rule 16(a)(1)(C)) covers evidence that is

"material 'to *the preparation of* the defendant's defense'" (emphasis in original). It is not limited

to evidence that is favorable or helpful to the defense and does not immunize inculpatory

evidence from disclosure. *See id*. "Inculpatory evidence, after all, is jut as likely to assist in 'the

preparation of the defendant's defense' as exculpatory evidence . . . . [I]t is just as important to

the preparation of a defense to know its potential pitfalls as to know its strengths." *Id*. (footnote

omitted). Rule 16 is intended to provide a criminal defendant "the widest possible opportunity to

inspect and receive such materials in the possession of the Government as may aid him in

presenting his side of the case." *United States v. Poindexter*, 727 F. Supp. 1470, 1473 (D.D.C.

1989); *see also United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (materiality standard

"is not a heavy burden"; evidence is material if there is indication that it may play an "important

---

8 U.S.C. § 1202(f). There can be no question that in a criminal case regarding the handling of
requests within a consulate, consular records are "needed by the Court in the interest of the ends
of justice" within the meaning of this statute. *See United States v. Carron*, 541 F. Supp. 347, 350
(W.D.N.Y. 1982).

role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal."); *United States v. George*, 786 F. Supp. 11, 13 (D.D.C. 1991) (the materiality hurdle "is not a high one"). With these principles in mind, the Court turns to the defendants' specific requests.

First, the Court concludes that defendants' requests respecting visa applications submitted by or on behalf of STS Jewels employees -- including requests for expedited visa interview appointments, decisions granting or denying such interview requests, and the grant or denial of the visas *themselves* are reasonable and narrowly tailored. They seek relevant information material to the defenses outlined above. Furthermore, in view of the proffered defenses, to meet the materiality test in this case the government must search not only the files at the Toronto consulate but also the files at any other consulate in North America where such requests for expedited appointments, decisions granting or denying such requests, or decisions regarding visas are likely to be found. Defendant Agrawal has identified the following consulates in addition to the one in Toronto: Ottawa, Canada; Matamoros, Mexico; Mexico City, Mexico; Nogales, Mexico; and Nuevo Laredo, Mexico.

Second, the government must produce all written rules, policies, procedures and guidelines regarding the treatment of expedited visa application appointments and visa application approvals at the above-mentioned posts in Canada and Mexico. Because such policies and procedures may not be formalized, however, the government must also produce any memoranda, letters, e-mails, faxes and other correspondence prepared or received by any consular officers at these posts that reflect either policy or decisions in specific cases with respect to expediting. The fact that the government has produced the publicly available and otherwise

-5-

formal policies, and that it intends to offer a witness at trial to testify about these matters, hardly

satisfies the test of providing information material to the preparation of a defense in advance of

trial. Moreover, it now appears from discovery produced on March 21, 2007 that employees

below the level of consular officers -- including even consulate secretaries and non-U.S. citizen

employees -- may approve requests for and schedule expedited visa interview appointments. The

files of any such persons and the consulates themselves therefore also must be searched. Such

communications go directly to the defense of showing that the requests made by or on behalf of

STS employees are similar to other requests for expedited visa interview appointments that (it is

asserted) have routinely been granted without the provision of anything of value.[2]

        Third, the government need not prepare a list of -- or produce all items showing --

the names of all corporations, companies and/or individuals who were granted expedited

treatment of Class H visas at embassies or consulates in Canada and Mexico. Responses to the

requests authorized by the preceding paragraphs should be sufficient both in identifying potential

witnesses and demonstrating that expedited visa appointments were available to a large number

---

[2]    Defendants request that the government be ordered to conduct a search of the hard
copy visa application files (and any other files likely to contain information responsive to this
and their other requests), as well as to conduct electronic searches of the relevant servers or hard
drives on which e-mail communications are stored. Defendants seek an order directing the
government to use certain key word search terms in conducting such searches. This specific
request is denied.

    The Court expects the government to respond to this Court's order by conducting
thorough and complete searches of both hard copy files and electronic files, in a good faith effort
to uncover all responsive information in its "possession, custody or control." FED. R. CRIM. P.
16(a)(1)(E). And, as stated above, the government cannot take a narrow or parsimonious view of
its obligations. The Court will not, however, micromanage the search process by listing the key
word search terms that must be used for the government to meet its obligations under Rule 16
and this Court's order or its professional and ethical obligations as representatives of the United
States and officers of the Court.

of applications on request (if that in fact turns out to be the case). If, however, there exists statistical information regarding the number of requests for expedited visa interview appointments and the disposition of such requests, it must be produced. If such information does not now exist, it need not be created.

Fourth, defendants' request for non-classified information related to the State Department's 2001-2002 investigation of the tanzanite industry is denied. The defendants' basis for desiring such information -- to show the extreme reputational and financial peril facing STS's and other jewelry manufacturers' business at the time, presumably relevant to motive -- is far too attenuated to meet the test of materiality.

The prosecutors in this case must craft a letter to the relevant personnel at the consulates identified herein that instructs them to conduct a thorough and complete search designed to uncover the required documents. The relevant time period for determining responsiveness shall be January 1, 2004 through the present. A copy of this Memorandum Opinion and Order must be appended to that letter. To avoid later disputes, the text of the letter and a list of addressees must be provided to the Court and to defense counsel in advance; counsel will have 72 hours to make suggestions and 72 hours after the government responds to those suggestions to interpose objections with the Court. This procedure is required not to create the potential for litigation over details but, rather, to encourage communication, accommodation and consensus in implementing the Court's decision without the need for further litigation over discovery.

Accordingly, it is hereby

ORDERED that defendant Agrawal's Motion to Compel [35] is GRANTED in

part and DENIED in part; it is

FURTHER ORDERED that the government shall provide discovery responses

consistent with this Memorandum Opinion and Order; and it is

FURTHER ORDERED that the parties shall submit a joint proposed schedule to

govern this case going forward on or before May 4, 2007.

SO ORDERED.


\_\_\_\_\_/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  April 27, 2007