## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL NO. 06-249 (PLF)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL JOHN O'KEEFE, Sr. and** | : | |
| **SUNIL AGRAWAL,** | : | |
| | : | |
| **Defendants.** | : | |

## GOVERNMENT'S OPPOSITION TO
## DEFENDANTS' JOINT MOTION FOR LEAVE TO TAKE
## <u>FOREIGN DISCOVERY AND FOR ISSUANCE OF A LETTER ROGATORY</u>

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes Defendants Sunil Agrawal and Michael John O'Keefe, Sr.'s motion for leave to take foreign discovery and for issuance of a letter rogatory in order to take depositions of four foreign service nationals employed by the United States consulate in Toronto, Canada. Because the defendants have failed to demonstrate exceptional circumstances compelling the testimony of these individuals, their motion is therefore without merit and should be denied. In support of this opposition, the government states as follows:

## I.  BACKGROUND

### A.  Factual Background

Defendant Agrawal is the chief executive officer of STS Jewels, Inc., a jewelry company that employs many foreign nationals. Defendant O'Keefe has been employed by the U.S. Department of State since 1983 and worked as a consular officer in the Non-Immigrant Visa ("NIV") section at the U.S. Consulate in Toronto from July, 2003, up to the time of his arrest in August, 2006. As a consular officer, Defendant O'Keefe's duties included reviewing visa

applications, conducting in-person interviews of visa applicants, and making visa issuance

determinations.

During all times relevant to the Indictment – February 1, 2004, through August 1, 2006 –

the Toronto consulate would only accept applications for non-immigrant visas from persons with

scheduled appointments.  The waiting period after an applicant made such a request varied and

could be quite lengthy.  In order to obtain an earlier appointment, a visa applicant could request

expedited treatment through fax, telephone, or in person.  In the Toronto consulate, a request by a

person seeking an expedited visa interview appointment was directed to the chief of the NIV

section or persons designated by the chief for a determination of whether to grant or deny the

request.   In some cases, the ability to grant, but not deny, requests for expedited interviews for

various types of visas was delegated by the NIV chief to other consular officers and foreign

service nationals at the consulate.  Patricia Haye, Althea Brathwaite, and Jane Boyd, but not

Maribel Ebona, have exercised this authority in certain instances.

Patricia Haye, Maribel Ebona, Althea Brathwaite, and Jane Boyd are all Canadian citizens

who are employed by the United States Department of State.  All four women work at the Toronto

consulate.  Patricia Haye and Jane Boyd are Visa Assistants, Althea Brathwaite is a Supervisory

Visa Specialist, and Maribel Ebona is a Visa Clerk.

### B.  Procedural Background

Defendant Agrawal and Defendant O'Keefe were arraigned September 27, 2006, and

September 1, 2006, respectively, on an Indictment charging each of them with on one count of

conspiracy, in violation of 18 U.S.C. §371, and two counts of bribery, in violation of 18 U.S.C. §

201(b)(1) and (2).  As set forth in the Indictment, the objects of the conspiracy were:

2

A.    for the defendant [O'Keefe] to receive travel, gifts, and other personal benefits in exchange for issuing visas to benefit defendant [Agrawal] and his business, STS Jewels.

B.    for defendant [Agrawal] to avoid established procedures for scheduling visa interview appointments and obtain expedited visa interview appointments and expedited issuance of visas, thereby saving him, his business and his employees time and money.

Indictment, Count One, at ¶ 9(A) & (B).  The bribery counts revolve around Defendant Agrawal's provision of things of value to Defendant O'Keefe with an intent to influence Defendant O'Keefe in his official duties regarding the scheduling of expedited non-immigrant visa appointments and the granting of non-immigrant visas to STS Jewels applicants.

During a March 22, 2007, motions hearing, counsel for defendants mentioned their need to have access to Canadian witnesses who worked at the Toronto consulate.  In an attempt to be of assistance, government counsel offered to make contact with Patricia Haye and other Canadian witnesses regarding the issue of defense witness interviews.[1]    On April 27, 2007, Defendant Agrawal's counsel sent a letter requesting to interview the following five individuals: Jane Boyd, Althea Brathwaite, Maribel Ebona, Patricia Haye, and Michael Niles.  On June 15, 2007, the government notified Defendant Agrawal's counsel in writing about its efforts to facilitate these interviews.  The government outlined the means and method[2] in which Defendant Agrawal's

---

[1]    Contrary to the defendants' assertion at page 4 of their Memorandum of Law in Support of Defendants' Joint Motion for Leave to Take Foreign Discovery and for Issuance of a Letter Rogatory (hereinafter "Defendants' Memorandum"), government counsel never "offered to set up interviews" with these Canadian witnesses.  Furthermore, government counsel's offer of assistance was in no way a reflection of the government's view of the materiality of the testimony of these witnesses.

[2]    Specifically, each of these applicants "was informed that the decision to answer the questions or not was completely up to that person and that any decision they made was

request was passed on to each of these individuals, as well as each of the individuals' eventual declination of the request.

On July 28, 2007, the defendants filed a motion and Defendants' Memorandum requesting "*testimony*[3] of Canadian secretaries and administrative staff who were involved in scheduling expedited visa interviews." Defendants' Memorandum at 1 (emphasis added). Defendants identified the following four Canadians as individuals of whom they seek to take depositions: Jane Boyd, Althea Brathwaite, Maribel Ebona, and Patricia Haye.

## II. ARGUMENT

As a general matter, the parties seeking to take depositions bear the burden of demonstrating that "'exceptional circumstances' necessitate the preservation of testimony through a deposition." United States v. Kelley, 36 F.3d 1118, 1124 (D.C. Cir. 1994) (citation omitted); see also Fed. R. Crim. P. 15(a). Because the defendants cannot make this necessary showing, they are not entitled to depose Jane Boyd, Althea Brathwaite, Maribel Ebona, and Patricia Haye.[4]

The government agrees with the defendants' analysis that the D.C. Circuit has found that

---

completely fine and that they would be supported in their decision by the Department of State either way." 6/15/07 Ltr. From AUSA Johnson to T. Green (Defendants' Memorandum at Ex. 7).

[3]    Although the defendants assert that they only seek the testimony of the four Canadian consulate employees, Defendants' proposed Request for International Judicial Assistance (hereinafter "Letter Rogatory") that is attached to Defendants' Memorandum states that, in addition to testimony, they seek "production of documentary and/or physical evidence from these Canadian citizens" as well. See id. at 2. The defendants have no basis for seeking documents and physical evidence from these witnesses.

[4]    Moreover, foreign depositions in criminal cases are suspect and therefore disfavored due to the absence of procedural protections afforded parties in the United States. United States v. Drogoul, 1 F.3d 1546 (11th Cir. 1993).

"critical factors toward meeting" the "exceptional circumstances" burden include (1) "the materiality of the testimony;"(2) "the unavailability of the witness to testify at trial;" and (3) "some showing, beyond 'unsubstantiated speculation,' that the evidence exculpates the defendant[s]."  See Kelley, 36 F.3d at 1125.  An analysis of these factors clearly reveals that the defendants have failed to meet their burden.

**A.    At Least One of the Named Witnesses Will be Available to Testify at Trial.**

The government intends to call individuals who worked at the Toronto consulate with Defendant O'Keefe at the time of the charged conduct, including at least one of the named Canadian witnesses – Patricia Haye – at trial.  Thus, the defendants will have ample opportunity to cross examine Ms. Haye and others about how the Toronto NIV section operated, including procedures regarding the approval of expedited visa requests.

**B.    Defendants' Cannot Show How the Testimony of the Canadian Witnesses is Material.**

For purposes of determining the existence of "exceptional circumstances" justifying the need for depositions in this case, the asserted materiality arguments set forth by the defendants must first be evaluated.  In United States v. Rosen, 240 F.R.D. 204 (E.D. Va. 2007), a case cited by the defendants in their memorandum, the court held that when depositions are requested by an accused in a criminal proceeding, the evidence or testimony sought is material if it is exculpatory, and not corroborative or cumulative of other evidence.  The Rosen court stated that "the materiality analysis requires examination of the forecasted testimony . . . to ascertain (I) whether it is exculpatory, i.e., tends to negate an element of the crime or to establish a defense, and (ii) whether it is cumulative of other evidence."  Id. at 209.

5

The defendants contend that the Canadian witnesses' testimony is material because the defense will need to explore through the witnesses what the "established procedures" in the Toronto consulate were.  See Defendants' Memorandum at 6-7.  Strictly obtaining information regarding the procedures for deciding whether to grant expedited visa interviews does not diminish the culpability of either defendant for engaging in bribery.  Putting aside Defendant O'Keefe's intimate knowledge of the expedited visa request procedure, the defendants have been provided with an immense amount of discovery regarding this issue.  Moreover, as set forth above, the government intends to call Patricia Haye and others who worked at the Toronto consulate.  Thus, this materiality assertion is both non-exculpatory and cumulative.

The purpose of Rule 15(a) of the Federal Rules of Criminal Procedure, which permits depositions in criminal cases to be taken only by the order of the court in exceptional circumstances, is to provide a mechanism "to preserve testimony for trial, not to 'provide a method of pretrial discovery.'" Kelley, 36 F.3d at 1124 (citation omitted).  The Schedule "A" Lines of Inquiry attached to the Letter Rogatory often reads like a discovery interrogatory.  For instance, paragraph 9 outlines a line of questioning involving "[t]he role of the consulate's third-party visa appointment scheduling vendor, NuComm International, and its role, if any in expediting visa interview appointments," and paragraph 11 requests information regarding "[t]he changes that were made to the consulate's expedited visa appointment policies after the indictment was issued against defendant O'Keefe." Defendants cannot seek to depose these Canadian consulate employees in order to conduct a fishing expedition.

Outside of their contention that these witnesses possess knowledge about procedures at the Toronto consulate, the defendants give no specific explanation for the materiality of the

witnesses' testimony other than offering the following general conclusory statement: "To the extent that virtually any visa applicant could obtain an expedited interview by contacting a secretary . . . the prosecution's allegation that Mr. Agrawal bribed a consular official to obtain such appointments is significantly, if not fatally, undermined." <u>See</u> Defendants' Memorandum at 6. And although the defendants attempt to shift the focus from their own conduct and motives, the fact that some of these Canadian witnesses – visa assistants and supervisory specialists – scheduled expedited visa appointments and granted expedited appointment requests does not render their testimony exculpatory. Moreover, as previously mentioned, evidence that employees like Jane Boyd were able to approve certain expedited interview requests is available from other sources.

**C.  Defendants are Unable to Show Beyond "Unsubstantiated Speculation" that the Evidence Exculpates the Defendants.**

In like manner, the defendants argue that they need the "exculpatory" testimony of these Canadian witnesses in order to "establish that (1) scheduling an expedited interview appointment is not an official act under 18 U.S.C. § 201, and (2) expedited appointments were so routinely and easily obtained in Toronto that the evidence undercuts the inference of a *qui*[d] *pro quo* based upon expedited appointments." Defendants' Memorandum at 4; <u>see also id.</u> at 6, 8. Defendants engage in "unsubstantiated speculation" in these arguments, which fail to support their contention that the testimony of these four witnesses would be material, much less exculpatory, in any way.

Under 18 U.S.C. § 201(a)(3), an official act is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in

such official's place of trust or profit."[5]  The United States Department of State has the sole

responsibility for issuing non-immigrant visas and therefore dictating the manner in which these

visas are issued.  Scheduling a visa appointment is a required step in obtaining a visa.

Consequently, the decision to grant a request for an expedited appointment is clearly an official

act notwithstanding whether this action or determination is undertaken by a consular officer, a

United States citizen, a foreign service national, or administrative staff.

Furthermore, under 18 U.S.C. § 201(a)(1), the term public official is defined, among other

things, as "an officer or employee or person acting for or on behalf of the United States, . . . in any

official function, under or by authority of any such department . . . ."  Congress intended a broad

interpretation of "public official," writing that the term encompasses officers and employees of

the United States, as well as other individuals working on behalf of the United States.  See S. Rep.

No. 87-2213 (1962), as reprinted in 1962 U.S.C.C.A.N. 3852, 3856.  The fact that some of these

Canadian visa assistants and supervisory visa specialists also had responsibility for granting

certain expedited visa interview requests in the Toronto consulate is in no way exculpatory of the

defendants' actions.[6]

_____

[5]     Moreover, an official action need not be prescribed by written regulation, but may
be established by settled practice.  See United States v. Birdsall, 233 U.S. 223, 230-31 (1914).
(holding that government employees, who had recommended sentence of leniency for individual
convicted of crime, were influenced in their official acts, even though the reports and
recommendations made were not required by statute, but were consistent with established
practices).

[6]     The D.C. Circuit has found that the language defining public official under the
bribery statute is subject to two possible interpretations.  See United States v. Neville, 82 F.3d
1101, 1104 (D.C. Cir. 1996).  Under the first interpretation, the term public official encompasses
all employees of the United States without qualification.  Id.  Under the second interpretation, 18
U.S.C. § 201(a)(1) should be read as "grouping 'officers' of, 'employees' of, and 'persons acting
for or on behalf of' the government into one category, requiring each of them to act 'in any

The defendants' contention that testimony from these Canadian witnesses would negate the *quid pro quo* element of the bribery similarly has no basis.  However, as set forth in the Indictment, Defendant O'Keefe accepted from Defendant Agrawal jewelry, trips, and other things of value in exchange for assisting STS Jewels-affiliated individuals with receiving expedited visa interviews and obtaining visas.  The fact that multiple individuals, including foreign service nationals and/or visa assistants and supervisory visa specialists, also had the ability to approve expedited visa interview requests does not negate the *quid pro quo* nature of the relationship between the two defendants, as evidenced by the electronic communications and the timing and approval of the scheduling of expedited interviews and visa adjudications.  There is no evidence that Patricia Haye, Althea Brathwaite, and Jane Boyd's authority to grant requests for expedited interviews in certain instances in any way legitimizes the defendants' criminal conduct.  Therefore, the defendants' arguments contain nothing more than "unsubstantiated speculation."

---

official function' and 'under the authority of' the government in order to qualify as a public official."  Neville, 82 F.3d at 1104.  Under either formulation, the employment and job responsibilities of these Canadian witnesses, all of whom work for the United States Department of State, mandates that they be deemed public officials.

WHEREFORE, because the defendants have failed to meet their burden of proving the "exceptional circumstances" necessary in order to take the depositions of the Canadian witnesses, the United States respectfully requests that the defendants' motion for leave to take foreign discovery and for issuance of a letter rogatory be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498610


By: _____

_____
BRENDA J. JOHNSON
DENISE CHEUNG
Assistant United States Attorneys
National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530

August 1, 2007