**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

       **v.**                                                                               **Cr. No. 06-249 (PLF/JMF)**

**MICHAEL JOHN O'KEEFE, SR.,
SUNIL AGRAWAL,**

       **Defendants.**

**MEMORANDUM OPINION**

There has been referred to me for resolution <u>Defendants' Joint Motion for Leave to Take Foreign Discovery and for Issuance of a Letter Rogatory</u>.

**The Charges in the Indictment**

Defendant Michael John O'Keefe was employed by the State Department in Toronto, Canada, as Deputy Nonimmigrant Visa Chief. The grand jury has charged that O'Keefe engaged in a conspiracy with defendant Sunil Agrawal. Pursuant to the terms of the conspiracy, O'Keefe would receive "travel, gifts and other benefits in exchange for issuing visas to benefit defendant Sunil Agrawal and his business, STS Jewels." Indictment ¶¶ 9 A & B. As a result, Agrawal was able to evade the "established procedures for scheduling visa interview appointments" and thus was able to "obtain expedited visa interview appointments and expedited issuance of visas, thereby saving him, his business and his employees time and money." <u>Id.</u>

The defendants claim that documents produced by the government in discovery indicate that persons employed by the United States as secretaries and assistants granted

expedited visa appointment interviews. After a hearing before Judge Friedman, the government offered to let defense counsel interview certain Canadian employees of the United States consulate. In a letter dated April 27, 2007, defense counsel specified the individuals he wished to interview. <u>Memorandum of Law in Support of Defendants' Motion for Leave to Take Foreign Discovery and for Issuance of a Letter Rogatory</u> ("Motion") at 4. On June 15, 2007, however, the government informed defense counsel that these individuals had declined to be interviewed. <u>Id.</u> The defendants therefore now seek a letter rogatory to the Canadian courts to take the depositions of these individuals. The government insists that defendants cannot show the "exceptional circumstances" required by Rule 15(a) of the Federal Rules of Criminal Procedure before the deposition of a witness may be taken.

**Controlling Legal Standards**

The Court of Appeals has stated:

> The purpose of Rule 15(a) is to preserve testimony for trial, not to "provide a method of pretrial discovery." *See* United States v. Troutman, 814 F.2d 1428, 1453 (10th Cir.1987). *See also* United States v. Adcock, 558 F.2d 397, 406 (8th Cir.), *cert. denied,* 434 U.S. 921, 98 S.Ct. 395, 54 L.Ed.2d 277 (1977).
>
> Furthermore, the party seeking the deposition bears the burden of demonstrating that "exceptional circumstances" necessitate the preservation of testimony through a deposition. ***1125 \*\*321** United States v. Ismaili, 828 F.2d 153, 159 (3d Cir.1987), *cert. denied,*485 U.S. 935, 108 S.Ct. 1110, 99 L.Ed.2d 271 (1988). Critical factors toward meeting this burden include (1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial. *Id.* Moreover, there is typically some showing, beyond "unsubstantiated speculation," that the evidence exculpates the defendant. *See, e.g.,* Guam v. Ngirangas, 806 F.2d 895, 897 (9th Cir.1986); United States v. Wilson, 601 F.2d 95, 97 (3d Cir.1979); United States v.

> *Ontiveros-Lucero,* 621 F.Supp. 1037, 1038 (W.D.Tex.1985), *aff'd,* 790 F.2d 891 (5th Cir.1986). We review the district court's denial of the motion to take depositions for an abuse of discretion. *Ismaili,* 828 F.2d at 158.

United States v. Kelley, 36 F.3d 1118, 1124-25 (D.C. Cir. 1994). Additionally, as I stated at the hearing, in exercising its discretion, the court must recognize that experience teaches that predictions about the admissibility of evidence before trial may not be proven true by what actually occurs at the trial. Moreover, as Judge Friedman has said in this very case, albeit while speaking of Rule 16 of the Federal Rules of Criminal Procedure, "[n]or may it [the government] put itself in the shoes of defense counsel in attempting to predict the nature of what the defense may be or what may be material to its preparation. United States v. Safavian, 233 F.R.D. 12, 15 (D.D.C. 2005)." United States v. O'Keefe, 06-CR-249, 2007 WL 1239204, at*2 (D.D.C. April 27, 2007).

### Official Act

Defendants argue that testimony from the secretaries and assistants will tend to show that O'Keefe's scheduling an expedited interview appointment was so common and ordinary an occurrence that it does not constitute an official act under 18 U.S.C. § 201(b)(1) or (2). Motion at 4. An official act is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit." 18 U.S.C. § 201(a)(3).[1] While one court has rejected the broad claim that ministerial acts could not constitute "official acts,"[2] the Court of Appeals in this Circuit rejected the following portion of an

---

[1] All references to the United States Code are to the electronic version that appears in Westlaw or Lexis.
[2] United States v. Hullender, 90-CR-60, 1990 WL 124068, at *4 (N.D.N.Y. Aug. 24, 1990).

3

instruction: "'[O]fficial act' means any decision or action within the scope of the public official's authority. The term 'official act' includes the decisions or actions generally expected of a public official such as a police officer." Valdes v. United States, 475 F.3d 1319, 1325 (D.C. Cir. 2007). This instruction was found to be erroneous because "the court refused to include the statutory language on which we have focused—the definition of 'official act'—or anything comparable." Id.

In my view, that case should compel Judge Friedman to instruct the jury as to the statutory definition of "official act" such that they will then be tasked with deciding whether O'Keefe's act of expediting interviews met it. I cannot say with any certainty that Judge Friedman will, in limine, preclude the defendants from arguing that this expediting of interviews was not an "official act," thus taking the question from the jury. I must therefore conclude that any evidence that would tend to negate the government's argument is material to defendants' case.

In this context, Judge Bates has recently pointed out that it is appropriate to distinguish between the availability of a deposition and its admissibility at trial in interpreting Rule 15:

> But the text and structure of Rule 15, as well as judicial opinions interpreting the rule, distinguish between the *availability* of a deposition and the eventual *admissibility* of the deposition testimony at trial. *See* Fed.R.Crim.P. 15; Advisory Committee Notes, 2002 Amendments. As the First Circuit put it, "[w]hen the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence." *United States v. Mann,* 590 F.2d 361, 366 (1st Cir.1978); *accord United States v. Drogoul,* 1 F.3d 1546, 1555 (11th Cir.1993); *United States v. Salim,* 855 F.2d 944, 952 (2d Cir.1988). The Court will follow that

4

>     course here, permitting defendant to depose
>     Thompson Ndip and deferring for the moment the
>     substantial questions as to the admissibility of some
>     or all of his deposition testimony.

<u>United States v. Njock Eyong</u>, 06-CR-305, 2007 WL 1576309, at *1 (D.D.C. May 30, 2007).

Identically, any doubt concerning the admissibility of the testimony of the four Canadians should be resolved in favor of taking their depositions now and ruling on their admissibility later.

### Negating Quid Pro Quo

Defendants also insist that the testimony from the four witnesses will show that "expedited appointments were so routinely and easily obtained in Toronto that the evidence undercuts the inference of a *qui[d] pro quo* based upon expedited appointments." Motion at 4.  I agree that if that if defendants could prove that expedited appointments were quickly and routinely granted to other applicants, it would make the government's argument that O'Keefe granted them to persons referred by his co-defendant based on a preexisting conspiracy less likely than it would be without that evidence.  In other words, the more ordinary and common the behavior, the less likely it was uniquely designed to aid a particular person.

### Conclusion

I cannot possibly condemn the showing the defendants have made in support of the relevancy of the testimony as unsubstantiated speculation.  To the contrary, I believe on this record that the testimony of these four witnesses is material and that it is not cumulative of other evidence.  See <u>United States v. Rosen</u>, 240 F.R.D. 204, 209 (E.D. Va. 2007).  An Order accompanies this Memorandum Opinion.

        /s/
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: September 13, 2007