**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Case No 1:06-cr-00249-PLF/JMF |
| ) | |
| MICHAEL JOHN O'KEEFE, SR. and ) | |
| SUNIL AGRAWAL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' JOINT MOTION TO COMPEL**

The Court's April 27, 2007 Memorandum Opinion and Order instructed the "government to respond to [the] Court's order by conducting thorough and complete searches of both hard copy files and electronic files, in a good faith effort to uncover all responsive information in its "possession, custody or control." *United States* v. *O'Keefe*, 2007 WL 1239204, at *3 n.2 (D.D.C. April 27, 2007) ("April 27 Order"). The Court further stated that "the government cannot take a narrow or parsimonious view of [these] obligations." *Id*.

Despite these orders, the record indicates that the various consulates have taken a "narrow and parsimonious" view of their discovery obligations—including their obligation to produce the documents in the order in which they are maintained or otherwise in a manner that indicates their source. Accordingly, defendants respectfully move the Court for an order compelling the government to provide the defense with (1) specific information regarding document productions, (2) specific information regarding efforts made to comply with the Court's April 27, 2007 Order, and (3) all documents responsive to the April 27 Order that have not been produced.

I.   BACKGROUND

At the June 19, 2007 status conference, the United States represented to the Court that it would produce all responsive material by August 1, 2007. On August 1, 2007, the government sent a letter to defendants, which stated: "This letter is to provide you with the final responsive materials pursuant [to] the Court's April 27, 2007, memorandum opinion and order…." 8/1/07 Ltr. from AUSA Johnson to T. Green **(Ex. 1)**. But the government did not produce all responsive documents by August 1. Moreover, over the last several months (both prior to and after August 1, 2007), defendants have attempted to resolve various issues and problems with the document productions from the various consulates. These inquiries have attempted to address "gaps" in the documents produced and a myriad of technical problems with the productions. *See, e.g.*, 9/28/07 Ltr. from AUSA Cheung to T. Green **(Ex. 2)**. As a result, the government is still in the process of attempting to comply with the Court's April 27 Order. *See id*.

For example, on August 23, 2007, defendants sent the government a letter inquiring about certain discovery issues, including questions about the Toronto consulate's search of electronic files. The letter was based upon a review of the documents produced which indicated that the production included *no email or other electronic documents*. *See* 8/23/07 Ltr. from D. Ludlow to AUSA Johnson **(Ex. 3)**. On September 10, 2007, the government responded that:

> A search of personal folders including <u>any</u> emails and/or electronic files related to expedited appointments has been provided as part of the electronic production of Toronto documents. Toronto searched user's personal folders, electronic files, and all e-mails from TorontoEmpNIV@state.gov and TRTNIV@state.gov email profiles, and produced <u>all</u> responsive documents from these searches.

2

9/10/07 Ltr. from AUSA Johnson to T. Green (emphasis added) **(Ex. 4)**. Defendants again conferred with counsel for the United States and explained why the government's representation clearly was not accurate. Finally, on September 20, 2007, the United States acknowledged that it had inadvertently failed to produce *any* electronic documents from Toronto consulate and produced 4,256 additional pages of materials, *see* 9/20/07 Ltr. from AUSA Cheung to T. Green **(Ex. 5)**, which consist of emails and attachments.[1] The government has not produced any forms, memoranda, letters, draft policies, word processing files, or other "stand-alone electronic documents"[2] from electronic sources at the Toronto consulate.

In its August 23, 2007 letter, defendants documented the fact that the manner in which this production was made it impossible to determine the source or custodian of the documents produced. It is not even possible to determine if documents from a single source or custodian were produced seriatim (*i.e.*, in Bates number order), as opposed to being shuffled together. Accordingly, defendants simply requested that the United States identify—by Bates number—which individual or custodian produced which documents. Specifically, the defendants asked for

> the Bates range for the production of each individual's responsive documents. The haphazard manner in which the government produced the documents has made it impossible for the defense to determine this information.

8/23/07 Ltr. from D. Ludlow to AUSA Johnson **(Ex. 3)**. The United States has refused to produced such information.

---

[1] All of the other documents produced by the Toronto consulate are from hardcopy or paper sources because virtually all of these documents have handwritten annotations or interlineations.

[2] For purposes of this motion, "stand-alone electronic documents" refer to any electronically stored files (except email), which are <u>not</u> attachments to a specific emails, but which are located on a custodian's hard drive, network space, or removable media. Such files are commonly stored in "MyDocuments," the "Desktop," or other folders on an employee's hard drive, and include, for example, electronic documents created in Word, Word Perfect, Notepad, Excel, PowerPoint, or any other computer application. In addition to storing such documents on local hard drives, employees at the Toronto consulate stored electronic documents on a network drive referred to as the "W" drive.

We are not suggesting that the United States Attorney's Office intentionally did anything to "scramble" the document productions or to make the productions incomplete or unusable. Nor are we suggesting that the government has ever intentionally misrepresented any facts or withheld any information regarding these discovery issues. But every lawyer in federal court has a duty to actively supervise and manage compliance with discovery orders such as the April 27 Order. *See Zubulake* v. *UBS Warburg LLC*, 229 F.R.D. 422, 432-33 (S.D.N.Y. 2004) ("Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched."). The United States may not rely on unsupported and untested representations from the consulates. *See United States* v. *Safavian*, 233 F.R.D. 12, 19 n. 5 (D.D.C. 2005). The problem here is that the State Department's and consulates' response to the April 27 Order—like information they have supplied to the defense throughout this case—is haphazard, incomplete and inaccurate.

Indeed, information provided by the various consulates to prosecution has repeatedly been inaccurate. For example, on January 23, 2007, the government stated (presumably based upon information from the consulate) that unless NIV Chief Michael Schimmel was on annual leave, "it would have been highly unusual for any other officer to rule [on expedited visa interview appointment] request[s]." On March 21, 2007—in response to the defendants' contrary representations in pleadings—the government conceded that its prior representation was incomplete and that "Michael Schimmel … authorized a foreign service national, Pat Haye, to … unilaterally grant[] expedited interviews." Then, on April 13, 2007, the government further modified its position by stating that Jane Boyd, another foreign service national, screened special interest expedited appointments, but that "[a]ll of the cases handled by Ms. Boyd were adjudicated by a consular officer." A few months later, on August 1, 2007,

however, the government finally conceded that it was not "highly unusual" for anyone other than Schimmel to rule on expedited visa requests. To the contrary, three secretaries—"Patricia Haye, Althea Brathwaite, and Jane Boyd … have exercised [] authority [to grant expedited appointments] in certain instances."

Likewise, on January 23, February 9, and February 20, 2007, the government represented to the defense that the consulate maintained no calendars or data compilations regarding expedited appointments. But on March 21, 2007, the government disclosed that Pat Haye in fact did maintain a calendar of expedited appointment requests. On April 13, 2007, the government further disclosed that Jane Boyd also kept a similar calendar. Furthermore, the government disclosed that NuComm International, an outsource call center, also electronically tracked data related to expedited appointments.

## II.     ARGUMENT

Federal Rule of Criminal Procedure 16 and *Brady* v. *Maryland* require that the government make a "systematic response" to discovery requests and orders. *See Safavian*, 233 F.R.D. at 19. This means that the government must use a "comprehensive means of searching for the e-mails, correspondence, and other documents that are … likely to uncover all of the documents requested [or ordered]," including "a thorough search for … all e-mails—including archived e-mails on hard drives…." *Id*. Self-identification of responsive documents by employees, while a helpful step to obtain some relevant documents, [] is not the systematic response that is required of the government." *Id*.; *see also Zubulake*, 229 F.R.D. at 432 ("[I]t is *not* sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information."). Instead, the government must, *inter alia*, become familiar with relevant the "data retention architectures" and "communicat[e] with the 'key players' … in order to understand how they stored information." *Id*. at 432.

5

In situations where there are potential issues with the comprehensiveness of the government's search, this Court has ordered the government to "provide the defendant[s] information as to what specific efforts were made to search for responsive documents, including the extent of the search for responsive documents within the possession, custody or control of [other agencies]." *Safavian*, 233 F.R.D. at 21. Such an order is not only appropriate, but necessary, in this case.

### A. The Government's Document Productions Do Not Identify the Custodian or Source of the Documents

As an general matter, the government has produced documents from the various consulates in a single, consulate-specific Bates numbered series (*e.g.*, TOR_0000001 *et seq.*, NOG_0000001 *et seq.*, etc.) without providing any information regarding the custodian or source of the documents. This leaves defendants to guess about the evidentiary value of the documents—*i.e.*, who created a document or on whose computer or in whose file a document was kept. Moreover, the absence of this information makes it impossible to assess the quality of the document searches. Defendants therefore simply request that the Court order the government to provide a chart that identifies the custodianship, custodian title, and source of all the produced documents by Bates number. For example:

| CUSTODIAN | TITLE | SOURCE | BATES RANGE |
|---|---|---|---|
| Patricia Haye | Non-Immigrant Visa Secretary | Hard Copy Desk Files | TOR_AAAAAAA – TOR_BBBBBBB |
| Patricia Haye | " | Outlook Exchange Server Email | TOR_CCCCCCC – TOR_DDDDDDD |
| Patricia Haye | " | Archived Email from Hard Drive Personal Folders (.pst file) | TOR_EEEEEEE – TOR_FFFFFFF |
| Patricia Haye | " | Hard Drive Stand-Alone Electronic Documents | TOR_GGGGGGG – TOR_HHHHHHH |
| Patricia Haye | " | "W" Drive Stand-Alone Electronic Documents | TOR_KKKKKKK – TOR_LLLLLLL |
| Patricia Haye | " | Archive CD | TOR_MMMMMM – TOR_NNNNNNN |
| Kentucky Consular Center | N/A | Toronto Hardcopy Visa Application Archives | TOR_OOOOOOO – TOR_QQQQQQQ |

B.   **There Are Production Gaps in the Government's Productions**

Even without clear custodian and source information, however, clear gaps in the document production demonstrate that the government has not performed the type of "systematic response" that Rule 16 and *Brady* require.

*First*, defendants have not located *any stand-alone electronic documents* in the Toronto consulate's productions despite the government's representations that such documents have been searched and produced. *See* 9/10/07 Ltr. from AUSA Johnson to T. Green **(Ex. 4)**. This strongly suggests that employees' hard drives have not been properly searched for responsive documents. This would also mean, for example, that personal email folders that are stored on employees' hard drives have not been searched for responsive documents. In particular, discovery produced by the government repeatedly *makes reference to responsive documents which are stored on the Toronto consulate's "W" drive*. In particular, hard copy documents from the consulate regularly include printed computer file information in the document footer, which indicates the source of additional responsive electronic documents. But no such electronic documents from the "W" drive have been produced. Similarly, other documents produced strongly indicate the existence of other highly responsive documents (*e.g.*, drafts of expedited appointment policies from employees' hard drives). But the Toronto consulate has produced no stand-alone electronic documents. It is inconceivable that the Toronto consulate has no responsive stand-alone electronic documents.

*Second*, the total volume of electronic documents produced by the Toronto consulate—4,256 pages—and by the other consulates[3] is highly suspect. The Court's order

---

[3] The disparity between the volume of documents provided by each consulate itself is fairly inexplicable, and calls into question each consulate's individual document search efforts. Specifically, the Toronto consulate produced a total of 20,200 pages. Ottawa only produced 1,860 pages. Mexico City produced 172,873 pages. Nogales produced 13,004 pages. Nuevo Laredo produced only 133 pages, and Matamoros only produced 565 pages.

required the production of all email and stand-alone electronic documents (on the network or hard drives) for all consular officials, secretaries, or other employees that were involved with expedited visa interview appointments. *See* April 27 Order, 2007 WL 1239204, at *3. But, to the extent one can discern which custodians produced which emails,[4] it appears that the government has produced less than 10 emails from Pat Haye's electronic files and less than 20 emails from Michael Schimmel's electronic files—despite the fact that these individuals scheduled (and communicated about) thousands of expedited visa appointments during the relevant time period. In other instances, it appears that no emails were produced from certain custodians, like Maribel Ebona (one of the Canadian citizen secretaries that defense counsel will depose), which suggests that her files were not searched at all.

*Third*, there are strong indications that—at least in Toronto—no employees' hard drives were searched. The best evidence of this is a letter from the consulate which contains certain self-imposed limitations that are inconsistent with the Court's Order. *See, e.g.*, 8/23/07 Ltr. from D. Ludlow to AUSA Johnson **(Ex. 3)**. For example, the Toronto letter states that the consulate searched "electronic data available *in the system*." *Id*. This means that the consulate apparently only searched for data in the networked system, including network email servers, and not on individual hard drives. *See id*. ("[t]he email search included all items in existence *on the server* at the time of the search.").[5] Furthermore, this ostensible violation of the Court's Order is corroborated by the documents—or lack thereof—themselves. Defendants have located no

---

[4] In particular, based on the image files produced by the government (which sometimes contain a header with the name of the person that "printed" the email), it seems that all the consulate did was to tell its employees to search for and self-identify responsive documents. "Self-identification of responsive documents by employees, while a helpful step to obtain some relevant documents, [] is not the systematic response that is required of the government." *Safavian*, 233 F.R.D. at 19. This is even more true where an employee has an incentive to <u>not</u> produce documents that will reflect poorly on the employee.

[5] Even this representation cannot be entirely accurate though because, as mentioned, it is clear that the government did not search and produced documents stored on the Toronto consulate's shared "W" drive.

8

electronic documents other than a small quantity of email (and attachments). Yet even these emails indicate that consular employees (including secretaries) have created and stored responsive stand-alone electronic documents (*e.g.*, purported draft policies on expedited appointments) on their computers. These types of documents are missing from the government's productions.

Accordingly, it appears for example, that the government did not search the computer of Michael Schimmel, the person who "established" Toronto's procedures during the relevant time period and who repeatedly has provided the government with half-truths and misinformation about those "policies" during the time in question. *See supra* § I. The Department of Justice made the choice to bring felony criminal charges based upon alleged State Department "policies" regarding the scheduling of expedited visa appointments. If those policies are half-baked or non-existent, the State Department should not be permitted to keep hiding that fact from the defense through inconsistent and incomplete discovery responses. *See* 9/10/07 Ltr. from AUSA Johnson to T. Green (emphasis added) **(Ex. 4)**.

*Fourth*, one of the most concrete indicators that the consulates did not systematically respond to the Court's April 27 Order concerns Mr. O'Keefe's electronic records. On December 7, 2006, the government produced "a DVD containing *emails* and pictures recovered from the U.S. State Department computer profile 'Okeefemj.'" *See* 12/7/06 Ltr. from AUSA Johnson to T. Green (emphasis added) **(Ex. 6)**. Even a quick comparison of the emails from this DVD with the emails from the government's recent 4,256-page production, indicates that the Toronto consulate did not provide the prosecution with numerous emails responsive to the April 27 Order that are associated with Mr. O'Keefe's electronic files.[6] If the Toronto

---

[6] Moreover, the government cannot argue that it simply chose not to reproduce these emails because (1) there is some apparent overlap between the two sets of data, (2) the data collections appear to be performed by different

9

consulate could not be bothered to locate and produce documents from a *defendant's* files in response to the April 27 Order, then it is reasonable to assume that the same thing occurred with respect to other employees.

*Fifth*, the Embassy in Ottawa has only produced 1860 pages of documents. However, the discovery provided by the government indicates that there archived copies of emails specific to expedited visa interview appointments that were likely not produced. Requiring the government to provide the information requested by this motion will appropriately address such issues.

*Sixth*, discovery provided by the government indicates that NuComm International, a third-party call center agent used by the Canadian consulates, has increasingly played a role in the expedited visa interview appointment process. In fact, the discovery provided to date contains communications with NuComm International regarding expedited visa interview appointments. However, defendants have not been provided with existing emails regarding expedited visa interview appointments that are currently located on NuComm's email servers. Such records are clearly with the government's custody and control for purposes of Rule 16 and *Brady* because the government already has produced scheduling data from NuComm. *See* 4/13/07 Ltr. from AUSA Johnson to T. Green **(Ex. 7_)**.

*Finally*, several of the consulates have indicated that responsive records may exist at the Kentucky Consular Center ("KCC") or other storage facilities. *See, e.g.*, 8/23/07 Ltr. from D. Ludlow to AUSA Johnson **(Ex. 3)**. Nevertheless, the Matamoros consulate, for example, originally stated that "Post did not contact Kentucky Consular Center (KCC) or other storage facility [sic] in [its] search." Similarly, the Toronto consulate—at least initially—limited its

---

people in different manners (*i.e.*, an agent from Bureau of Diplomatic Security in the first instance and some type of "self-identification' in the second instance), and (3) the manner in which the documents were produced makes it virtually impossible for the government to accurately and forensically "deduplicate" emails.

search to "documents at post," even though the consulate also acknowledged that hardcopy records "at post" only date back to January 2006. Later, the government summarily responded that off-site storage facilities were searched (including by implication the KCC and National Archives and Records Administration); however, the thoroughness of any such search is not readily apparent from the document productions. For one, the April 27 Order required the production of responsive documents from 2004 to present. To date, the Toronto consulate has produced 12,474 pages from hardcopy files at "at post," but according the consulate, such files would only date back to approximately January 2006. In contrast, the Toronto consulate produced only 3,468 pages from off-site sources—roughly a quarter of the volume produced from "at post" sources—even though the consulate indicates that off-site sources would account for approximately two-thirds (*i.e.*, January 2004 to January 2006) of the expedited appointment requests by relevant year (and possibly more by sheer volume). The government has failed to explain this anomaly.

        C.    **Detailed Information About the Government's Efforts and Productions**

The examples set forth above relating to "completeness" and "integrity"[7] of the searches and productions made by the consulates are sufficient to justify some systematic explanation of exactly what was done (and not done) to search for responsive documents. Although defendants have asked for this information informally, to date, counsel for the government has been unwilling to provide it.

---

[7] In addition to concerns with the consulate's searches for responsive documents, the production themselves contain many issues that may affect the evidentiary value of documents. For example, it appears that in certain instances precautions may not have been taken to preserve original metadata associated with electronic documents. In addition, most of the documents were produced without any physical or technological document break marker, so it is difficult to determine how documents were stored in the ordinary course of business. Similarly, substantial portions of discovery—particularly in Mexico—were processed incorrectly and incomprehensively. The government is currently working to reproduce those documents.

11

Therefore, the Court should order a response from each consulate or embassy regarding the following aspects of its document searches:

- A production chart or index by Bates number that identifies custodianship, custodian title, and source of all produced documents. *See supra* II.A.

- The name, title, and role of each current or former employee whose files were searched in order to respond to the Court's April 27 Order, and a complete description of all hardcopy and electronic sources searched for responsive documents for each custodian (and/or general consulate file location).[8]

- A description how each source was searched and who conducted the searches (*e.g.*, self-collection, keyword searches, document reviewer, etc.).

If the government has indeed made a "systematic response" to the Court's order, providing such information will be straightforward and simple.

---

[8] Below are examples of the types of custodian and source information defendants are seeking:
- Toronto Consulate: Hardcopy files re expedited appointment requests (2004-2005)
- Toronto Consulate: Common "W" drive electronic documents
- Toronto Consulate: Email from TorontoEmpNIV@state.gov
- Kentucky Consular Center: Toronto Archived Visa Application Files (2005)
- Pat Haye: Outlook server email
- Pat Haye: Archived email from hard drive email files (.pst or .msg files)
- Pat Haye: Hardcopy desk files.

### III.     CONCLUSION

For the foregoing reasons, defendants respectfully requests that the Court grant their Joint Motion to Compel.

Dated:  October 9, 2007                              Respectfully submitted,


_____/s/_____
Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
David J. Ludlow (D.C. Bar #489136)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
(202) 736-8000
*Counsel for Defendant Sunil Agrawal*


_____/s/_____
Bernard S. Grimm
LAW OFFICES OF BERNARD S. GRIMM
503 D Street, NW, Suite 250
Washington, DC 20001
(202) 371-0300
*Counsel for Defendant Michael John O'Keefe*