**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. CR-06-0249 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL JOHN O'KEEFE, Sr.,** | : | |
| **SUNIL AGRAWAL,** | : | |
| | : | |
| **Defendants** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANTS'
JOINT MOTION TO COMPEL DISCOVERY**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully opposes Defendants Michael John O'Keefe, Sr., and Sunil Agrawal's joint motion to compel discovery. The defendants seek to have the government provide extensive information beyond that required in the Court's April 27, 2007, Order. The government has made a good faith effort to comply with the Court's Order and has provided the defendants with a voluminous amount of responsive documents. The level of specificity and additional information requested by the defendants is neither mandated nor necessary. The motion is without merit and should be denied. In support of this Opposition, the government states the following:

BACKGROUND

The defendants are charged with one count of conspiracy in violation of 18 U.S.C. § 371 and two counts of bribery in violation of 18 U.S.C. § 201(b)(1) and (2). The conduct concerns Defendant Agrawal's provision of things of value to Defendant O'Keefe with an intent to influence Defendant O'Keefe in his official duties as a consular officer at the U.S. Consulate in Toronto, Canada with respect to the scheduling of expedited visa appointments and the granting of visas to STS Jewels, Inc. applicants sponsored by Defendant Agrawal.

On January 30, 2007, Defendant Agrawal filed a motion to compel discovery[1] seeking, among other things, information from the United States Department of State regarding expedited visas at Toronto, as well as five other embassies and consulates in North America. On February 9, 2007, the government filed a motion in opposition to the defense motion. A hearing on the matter was held on March 22, 2007. On April 27, 2007, the Court ruled on the motion in a written Memorandum Opinion and Order. See United States v. O'Keefe, 2007 WL 1239204 (D.D.C. April 27, 2007). As part of the Order, the Court stated that the government should file a letter that would inform the consulates subject to the Order of their search and production obligations and that all of the parties agree on the contents of that correspondence prior to its dissemination. See id. at *4.

Specifically, the Court stated, "To avoid later disputes, the text of the letter and a list of the addressees must be provided to the Court and to defense counsel in advance; counsel will have 72 hours to make suggestions and 72 hours after the government responds to those suggestions to interpose objections with the Court. This procedure is required not to create the potential for litigation over details but, rather, to encourage communication, accommodation and consensus in implementing the Court's decision without the need for further litigation over discovery." Id.

On May 7, 2007, the United States filed a notice to the Court with a copy of letters addressed to June H. Kunsman, Managing Director of the Visa Office at the Department of State, and to designated contacts at the consulates and embassies in Toronto, Canada; Ottawa, Canada; Matamoros, Mexico; Mexico City, Mexico; Nogales, Mexico; and Nuevo Laredo, Mexico,

---

[1] Defendant O'Keefe joined the motion of Defendant Agrawal.

advising all of the individuals of the Court's April 27, 2007, Memorandum Opinion and Order. A copy of these letters is attached to this pleading as Exhibit A. These letters detailing the expectations and giving parameters of the searches to be conducted were approved by counsel for Defendant O'Keefe and Defendant Agrawal, as directed by the Court, prior to the respective posts being formally notified of the Court's Order. In fact, the defense took the opportunity to demand changes to the language originally proposed by the government, and the parties reached consensus on the final letters as directed by the Court. During this process, the defendants did not indicate a need for a production chart identifying the custodian, location or source of responsive documents, or even suggest a bates numbering system to identify the documents.

The approved May 7, 2007, letter, along with a copy of the Court's Order, was disseminated to the six embassies and consulates by the Department of State. As each embassy or consulate began to produce responsive materials, the Department of State provided the information to the United States Attorney's Office. Once the United States Attorney's Office received the information, each individual page was bates stamped to identify the geographic source of the information, as well as to designate each page with a unique number for ease of identification. The government thereafter provided the materials to the defense on a rolling basis. Responsive documents were provided as either hard copy documents or electronically on CDs. The type of materials that have been provided have ranged from documentation of specific requests for expedited appointments to e-mails discussing proposed revisions to expedited visa application policies to responses to inquiries from the United States Attorney's Office regarding the existence of and search for responsive documents.

## ARGUMENT

The government has provided responsive information in compliance with the Court's April 27, 2007, Memorandum Opinion and Order. Despite the scope and breadth of the undertaking, the government has attempted to provide information in a timely manner that is orderly and consistent by numbering the pages and indicating to the defense the consulate or, in some cases, the storage facility, where the information was obtained. The government has labored to appropriately respond to defense inquiries and questions regarding particular documents and productions. The government has even offered to provide the electronic information to the defense in the same manner in which it was received from the posts without the bates numbering identifiers.[2]

The Department of State did not participate in the bates stamping process nor are they aware of the identification process that was conducted. The Department of State devoted an enormous amount of resources in attempting to abide by the Court's Order and providing responsive documents as quickly as possible. Moreover, the Court's Order and the agreed upon letter directed to the consulates did not dictate the methodology and format of the productions. Requiring that Department of State officials engage in the process of going back and identifying each specific page of a document by custodian, title, source and bates range at this point would result in the posts having to essentially redo much of the search process in some cases. Furthermore, this endeavor is unnecessary. On emails, correspondence, or memoranda, the authors and recipients of various documents are self-evident. It is also unclear why the defendants require this level of detailed information other than for the convenience of having the

---

[2] The government is currently in the process of providing these "native files" to the defense.

government provide an index to its entire production, thereby facilitating the defense review process.

In support of their motion, the defendants cite to what they characterize as a number of "production gaps" that they allege demonstrate that the government has not performed a "systematic response" to the Court's Order.  See Defendants' Memorandum in Support of Defendants' Joint Motion to Compel (hereinafter "Defendants' Memorandum") at 7.  The defendants argue, "The disparity between the volume of documents provided by each consulate itself is fairly inexplicable, and calls into question each consulate's individual document search efforts."  Id. at 7 & n.3.  This claim is based on totally unsubstantiated speculation.   The volume of overall visa applications and requests for expedited appointments varies from consulate to consulate.   For instance, from October 2005 to March 2006, Ottawa handled approximately 11,184 visa applications, while Toronto handled approximately 30,861 visa applications during that same time period.  Moreover, the generation of any expedited interview documentation (for example, "blue sheets" noting the granting or denial of such a request), as well as differing record retention practices, also impact the number of responsive documents in existence at a given post.  Making an adverse assumption based on volume alone is therefore inappropriate.

Most of the defendants' alleged production gaps refer to the production of information pertaining to the Toronto consulate – the location of the charged criminal conduct in the instant case.  Personnel at the Toronto consulate spent more than 160 hours conducting searches and preparing copies of materials in response to the Court's Order.  See Declaration of Peggy L.

Petrovich (hereinafter "Petrovich Declaration") at ¶ 2, attached as Attachment B.[3] The defense first maintains that there are deficiencies in the electronic document productions provided by the Toronto consulate by contending that they have not located any stand-alone electronic documents in the Toronto consulate's document productions. See Defendants' Memorandum at 7. As set forth in the Declaration of Peggy L. Petrovich, Visa Unit Chief of the Toronto consulate, the consulate provided hard copies of all responsive electronic stand-alone documents relating to expedited appointments. See Petrovich Declaration at ¶¶ 3, 10. Because the documents were located electronically and then printed out, they were not provided in electronic format to the United States Attorney's Office and subsequently to the defense. The only documents provided in electronic format from Toronto were emails.

Notwithstanding this fact, the defense also alleges without any basis that the volumes of electronic documents produced "is highly suspect." Defendants' Memorandum at 7. As a preliminary issue, how often or to what extent a consular employee may have either communicated over electronic means or created any document regarding expedited interviews is unknown and inevitably varies. Furthermore, whether an individual chose to save these types of materials is similarly impossible to ascertain. The Toronto consulate conducted a search of all email and stand-alone electronic documents on any document or electronic documents as mandated by the Court's Order. See Petrovich Declaration at ¶¶ 6-7. Hard drives of employees, even some like Michael Schimmel who no longer work at the Toronto consulate, were similarly

---

[3] In light of the numerous allegations made by the defendants, the government secured a declaration from Ms. Petrovich specifically in order to assist the Court in understanding the substantial efforts undertaken by the Toronto consulate and to rebut the defendants' contention that there was a failure to comply with the Court's Order or that the consulate adopted a "narrow or parsimonious" approach to its search.

searched.  See id. at ¶ 10.

Similarly, the defendant's contention that a quick comparison of Defendant O'Keefe's emails previously provided by the government in discovery compared to the emails produced by the Toronto consulate indicates a lack of compliance with the Court's Order has no foundation. The Toronto consulate searched existing servers or locations, including Defendant O'Keefe's mail box, as part of their search and production efforts.  Items contained in Defendant O'Keefe's electronic hard drives were not included as part of the production by the Toronto consulate because these drives were no longer in possession of the consulate at the time of the Court's Order.  See id. at ¶ 9.  Moreover, copies of Defendant O'Keefe's electronic hard drives were already turned over in their entirety to the defendants as part of a December 6, 2006, discovery packet.

There are no back-up servers located off-site from various posts.  Moreover, any back-up servers, which are designed to quickly restore a server if it dies, only retain information for weeks or months, at the most.  For instance, Toronto back-up servers only go back two weeks before subsequently being saved over.  See id. at ¶ 8.  Therefore, to the extent that technically responsive electronic data (if it even existed in the first place) was deleted at some point before the electronic server retention period at a given post, such information cannot be retrieved.  See id.

The defendants also broadly contend that the Embassy in Ottawa "likely" did not produce emails specific to expedited appointments due to the volume of materials provided.  See Defendants' Memorandum at 10.  The Embassy in Ottawa engaged in a comprehensive search, including searching the existing and archived files for information regarding requests for expedited visa appointments.  Although Toronto is a consulate, it operates on a larger scale than

the Embassy in Ottawa for purposes of issuing visas, handling about 40% of all United States visas issued from Canada. Moreover, Ottawa's practice did not include the use of blue sheets or other documentation designating whether an application was expedited or not. Therefore, it stands to reason that the documents produced from Toronto and Ottawa would vary significantly in numbers.

Finally, as previously relayed to the defendants, visa application files that could possibly contain responsive materials located at storage facilities of the Department of State, including the Kentucky Consular Center ("KCC") and the National Archives and Records Administration, were also searched by the Department of State. Over 70 hours were spent searching these off-site storage materials. Documents found as a result of the searches were produced to the defendants. The defendants once again immediately jump to an adverse conclusion that something irregular occurred because the number of documents produced from January 2004 to January 2006 was less than the number produced from January 2006 to the approximate time of the Court's Order (that is, May 2007). Once again, there could be a variety of reasons why numbers differ. For instance, as discussed above, unless an individual had saved old emails or documents pertaining to expedited appointments, production of these items at this date would be impossible. Moreover, there could have been an increase in the volume of the number of people requesting visas and respective requests for expedited appointments. In short, there could be multiple reasons, none of which are relevant to the fact that searches were conducted and responsive documents were produced pursuant to the Court's Order.

As a final matter, the defendants also state that they are entitled to information from NuComm International, a third-party call center with which the State Department has contracted

to handle the scheduling of visa appointments for various consulates in Canada, including Toronto and Ottawa, since December 2005. NuComm International, which maintains an on-line calendar accessible to consular staff, provides a service whereby visa applicants can either schedule an appointment on a website or call in to a NuComm International representative to schedule such an appointment.[4] The company does not have the authority to grant or deny an applicant's request for an expedited visa appointment. Any such request would be directed to the consulate. The defendants' motion is the first request that the defense has made for emails from NuComm International's servers.

As acknowledged by the defendants, certain emails concerning communications between NuComm International staff and consulate personnel regarding expedited visa appointments have already been provided to the defendants through Department of State searches. See Defendants' Memorandum at 10. Any email servers of NuComm International are maintained and controlled by the company, not the Department of State. Nevertheless, after receipt of the defendants' motion, the government contacted NuComm International to assess whether any e-mails regarding expedited interviews exist on NuComm International servers. A company representative stated that a search was done of personal email inboxes for any saved emails that

---

[4] The defendants have already been provided with copies of these on-line calendars for Toronto and Ottawa for the relevant time period specified in the Court's Order. During the course of conversations with NuComm International in addressing the issue of emails, the government learned for the first time that an additional field exists on these on-line calendars for the NuComm International worker to type in notes about a given visa appointment inquiry. Such notes could reference an applicant's request for an expedited interview. Moreover, although these notes could not be altered by consular employees, such employees could access the notes on-line to read them. The government is not sure about the substance of these notes, but is in the process of trying to obtain copies of all such notes pertaining to expedited interviews so that they can be provided to the defendants as soon as possible if they are responsive to the Court's Order.

related to expedited appointments at Toronto in light of the government's inquiry, and none were found. The government also asked whether any back-up servers might contain such emails and was told that such a possibility existed. According to the NuComm International representative, any emails regarding expedited appointments with the consulates would either involve (1) discussions about the functionality of the website or scheduling process or (2) requests or updates about the scheduling of an individual's application (for example, "Have you received the expedited request from John Doe yet"?). The NuComm representative stated that a search of the servers would require a manual sifting through of daily email back-ups. The representative mentioned that, after consultation with the company's IT department, it was estimated that such a search for emails with Toronto would be billed at $20,000 (160 hours x $125/hour). The government does not believe that the potential information contained on NuComm International's servers is in the custody and control of the government. However, the government would be amenable to coordinating the defendants' efforts to have NuComm International undertake such a search at the defendants' expense.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the defendants' joint motion to compel discovery be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
D.C. Bar Number 498610

By:       /S/
_____
BRENDA J. JOHNSON
(202) 353-4154
Brenda.Johnson@usdoj.gov
DENISE CHEUNG
(202) 307-2845
Denise.Cheung@usdoj.gov
Assistant United States Attorneys
National Security Section
555 4th Street, N.W. – 11th Floor
Washington, D.C.  20530