**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> v. ) <br> ) <br> MICHAEL JOHN O'KEEFE, SR. and ) <br> SUNIL AGRAWAL, ) <br> ) <br> Defendants. ) | Criminal Case No 1:06-cr-00249-PLF |

**MEMORANDUM OF LAW IN SUPPORT OF MR. AGRAWAL'S
MOTION TO DISMISS THE GOVERNMENT'S
<u>CONSTRUCTIVE AMENDMENT OF THE INDICTMENT</u>**

**I.      INTRODUCTION**

The government's press release touted this as a matter involving conduct that "jeopardizes our national security."[1] But the Indictment never alleges that visas were improperly or fraudulently issued to anyone—and certainly not anyone who was a threat to "national security." *See* 4/4/07 Ltr. from AUSA B. Johnson to T. Green ("[N]either Defendant Agrawal nor Defendant O'Keefe are charged with committing visa fraud … this is, and has always been, a conspiracy and bribery case.") **(Ex. 1)**.

The Indictment is plainly premised on the allegation that Mr. Agrawal bribed Mr. O'Keefe to grant expedited visa interview appointments. The Indictment alleged that the process of obtaining expedited visa interview appointments was a formal, official process, which process Mr. O'Keefe allegedly was bribed to subvert. *See, e.g.*, Docket No. 59, Gov't Opp. at 7-8; Indictment, Count 1, ¶ 9B (defendants "avoid[ed] established procedures for scheduling visa

---

[1] *See* DOJ Press Release, *Foreign Service Officer and International Jeweler Indicted on Charges of Bribery and Conspiracy* (August 25, 2006), *available at* http://www.state.gov/m/ds/rls/71546.htm (last visited September 21, 2007).

interview appointments"). But since Indictment, the government has admitted that expedited visa interview appointments are "*not essential to the determination of whether or not the visa is issued.*" *See* Docket No. 35, Ex. 1, 1/23/07 Ltr. from B. Johnson to T. Green at 9 (emphasis added). In fact, expedited visa appointments were so widely and loosely granted that expedited appointments were not necessarily tracked or documented, *id.*, and (non-U.S. citizen) secretaries had discretion to grant such appointments, *see* Docket No. 59, Gov't Opp. at 2.

In its recent pronouncements, the government has indicated that they would like to proceed on a theory that Mr. Agrawal bribed Mr. O'Keefe to *corruptly* grant visas. This attempt to contort the allegations of the Indictment apparently is a response to exculpatory revelations regarding the expedited interview appointment process. The government recently presented this argument at a hearing before Judge Facciola and in its Opposition to Defendant's Second Motion to Compel. *See* 9/12/07 Hr'g Tr. at 18 ("this case is about Mr. O'Keefe … not only expediting interviews on behalf of Mr. Agrawal, but also issuing visas for employees"); Gov't Opp. at 1 (Oct. 26, 2007) [Docket No. 78] ("The conduct concerns … provision of things of value … with an intent to influence Defendant O'Keefe … with respect to the scheduling of expedited visa appointments and the granting of visas….").

The Indictment should not be a moving target. Despite the prosecution's recent arguments, the Indictment does not allege that Mr. O'Keefe improperly granted visas or that Mr. Agrawal sought to obtain visas improperly. Accordingly, Mr. Agrawal respectfully requests that the Court dismiss Counts 1, 2, and 3 of the Indictment to the extent the government alleges that Mr. Agrawal bribed Mr. O'Keefe to issue visas (as opposed to granting expedited visa interview appointments).

## II. BACKGROUND

At the end of the March 22 motion to compel hearing, the government asserted:

> "[D]espite the defense couching this as merely an expedited appointment case, this is – there are different allegations as set forth in the indictment in this case that defendant O'Keefe not only improperly granted expedited appointments, but *in terms of the processing and the eventual adjudication of these visa applications*, so just as a factual matter I wanted to correct the record there. This is not just an expedited appointment matter, no matter whether the current discovery questions involve expedited appointments.

H'rg Tr. at 50 (March 22, 2007) (emphasis added).[2] On March 29, 2007, Mr. Agrawal requested particularization of charges and allegations in the Indictment in light of the government's vague references to the improper issuance of visas by Mr. O'Keefe. *See* 3/29/07 Ltr. from T. Green to AUSA Johnson (**Ex. 2**). On April 4, 2007, the government refused to further particularize the charges, arguing that the Indictment and information previously provided "to the defendants … are sufficiently specific and detailed enough … to *perhaps* avoid being retried on the same charges." *See* **Ex. 1** (emphasis added).

In the same letter, the prosecutors stated that the charges did not involve "visa fraud" and that "this is, and always has been, a conspiracy and bribery case." *Id*. at 1. In particular, the government stated that "Defendants O'Keefe and Agrawal engaged in a pattern of conduct, whereby Defendant O'Keefe would ensure, or attempt to ensure, that Defendant Agrawal's employees … received *expedited* visa appointments and visa issuances …." *Id*. at 1 (emphasis added). These statements reassured defendants that the government intended to proceed on the basis of the charges set forth in the Indictment—*i.e.*, the scheduling of *expedited*

---

[2] In response to the statements made at the hearing, on March 23, 2007, defense counsel participated in telephone call with the government in which the government reaffirmed its position that improper issuance of the visas were part of the charges in this case. When asked directly whether the government intended to argue that the visas should not have been granted as a *substantive* matter, AUSA Johnson responded "that is what the Indictment says."

3

visa interview appointments (and, by natural consequence, *expedited* visa issuances). *See infra* note 4; Indictment Count 1, ¶ 9.B. (object of the conspiracy was to "obtain *expedited* visa interview appointments and *expedited issuance of visas*") (emphasis added).

Apparently defendants were mistaken in relying upon the March 29 letter because, at the September 12, 2007 hearing before Judge Facciola, the government again returned to its argument that the Indictment charges defendants with both bribery to improperly obtain visas and bribery to obtain expedited visa appointments. *See* 9/12/07 Hr'g Tr. at 18 ("this case is about Mr. O'Keefe … not only expediting interviews on behalf of Mr. Agrawal, but also issuing visas for employees").

### III.   ARGUMENT

#### A.   Legal Standard:  Constitutional Prohibition Against Amending an Indictment

The Constitution prohibits the prosecution from constructively amending or broadening an indictment the grand jury has returned. *See Stirone* v. *United States*, 361 U.S. 212, 215-217 (1960) ("after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself"); *Gaither* v. *United States*, 413 F.2d 1061, 1072 (D.C. Cir. 1969) (same); *United States* v. *Lawton*, 995 F.2d 290, 294 (D.C. Cir. 1993) (same); *United States* v. *Hitt*, 107 F. Supp. 2d 29, 31, 37 (D.D.C. 2000) ("*Hitt I*"), *aff'd*, 249 F.3d 1010 (D.C. Cir. 2001) ("*Hitt II*") ("the government is bound to prosecute the crimes charged in the indictment and no others").

This prohibition serves to protect a criminal defendants' Constitutional notice and double jeopardy rights. *See Hamling* v. *United States*, 418 U.S. 87, 117 (1974) (an indictment must "fairly inform[] a defendant of the charge against which he must defend" and "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."); *see also Hitt II*, 249 F.3d at 1016, 1026. Thus, it is reversible error for the prosecution to amend an

4

indictment by proof offered, by argument, or by jury instruction. *See, e.g.*, *Stirone*, 361 U.S. 219 ("fatal error" for the court to admit evidence at variance with charges in the Indictment and instruct the jury to consider such evidence).

Impermissible amendments occur when proof offered, argument, or jury instructions affect an essential element of the offense charged. *See id*. at 218-219 (proof offered was at variance with Indictment's charge concerning "interference with interstate commerce" element of Hobbs Act offense); *Hitt II*, 249 F.3d at 1026 (rejecting the government's "attempt to expand the scope of the conspiratorial agreement beyond the plain language of the indictment"). Because "[i]t is the grand jurors' meaning and intent that controls,"[3] *Hitt I*, 107 F. Supp. 2d at 37, the prosecution and the Court must strictly adhere to the text of the Indictment. *Hitt II*, 249 F.3d at 1015-16, 1019-20 ("Adherence to the language of the Indictment is essential because the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury."). As a result, surplusage is irrelevant and ambiguities are construed "in light of [the indictment's] principal purposes of clarity and notice." *Hitt II*, 249 F.3d at 1019-20; *Hitt I*, 107 F. Supp. 2d at 32 n.3 (surplusage is irrelevant in construing the scope of an indictment). Moreover, a bill of particulars cannot cure a defective indictment. *Russell* v. *United States*, 369 U.S. 749, 769-70 (1962).

---

[3] The government's shifting-theory tactics are even more problematic because it is clear that the government at least considered presenting visa fraud charges to the grand jury. *See* **Ex. 3**; *Hitt I*, 107 F. Supp. 2d at 37 (quoting *Russell* v. *United States*, 369 U.S. 749, 770 (1962)):

> An indictment that requires a prosecutor or judge to "guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the granting of the intervention of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him."

5

B.     **Legal Standard: The Federal Bribery Statute (18 U.S.C. § 201)**

Mr. Agrawal is charged with violating, conspiring to violate, and aiding and abetting violations of the federal bribery statute (18 U.S.C. § 201)—a statute the Supreme Court and the D.C. Circuit have criticized as replete with ambiguity. *See United States* v. *Sun-Diamond Growers*, 526 U.S. 398, 412 (1999); *Valdes* v. *United States*, 475 F.3d 1319, 1323 (2007). The bribery statute requires that the prosecution allege and prove that Mr. Agrawal "directly or indirectly, corruptly [gave], offer[ed] or promise[d] anything of value to any public official … or offer[ed] or promise[d] any public official … to give anything of value to any other person or entity, with intent … to influence any official act …." 18 U.S.C. § 201(b). To be sufficient an indictment must also allege "a *quid pro quo*—a specific intent to give or receive something of value *in exchange* for an official act." *Sun-Diamond*, 526 U.S. at 404-05; *see United States* v. *Brewster*, 506 F.2d 66, 72 (D.C. Cir. 1974). These are the essential elements of bribery under 18 U.S.C. § 201.

C.     **Accepting the Government's New Theory of the Case Would Impermissibly Amend the Indictment Returned by the Grand Jury**

Although the government asserts that the Indictment is "*perhaps*" sufficient to "avoid being retried on the same charges," **Ex. 1**, the Indictment is not broad enough to bear the interpretation that the government now attempts to impose upon it. In particular, the government now wants to proceed on an interpretation of the Indictment as charging defendants with bribery both for "scheduling of expedited visa appointments and [for] the granting of visas." *See* Gov't Opp. at 1 (Oct. 26, 2007) [Docket No. 78]. That interpretation cannot be sustained on the face of the Indictment. Even construing the Indictment liberally, the grand jury has not charged that Mr. Agrawal bribed Mr. O'Keefe to issue visas that should not have been granted or to issue visas that were substantively flawed. Arguing or offering proof that Mr. Agrawal bribed Mr. O'Keefe

6

to *corruptly* grant visas expands the scope of the official act and intent (and therefore conspiracy) elements as charged. This type of constructive amendment violates the Constitutional protections afforded criminal defendants.

### 1. The Indictment Expressly Defines the Official Act Element in a Manner That Precludes the Government's Interpretation

The Indictment alleges that Mr. Agrawal offered and provided Mr. O'Keefe with things of value in return for the performance of <u>one</u> official act. Indictment, Counts 2, 3 ("in return for being influenced in the performance of <u>an</u> official act") (emphasis added). Moreover, the Indictment expressly defines this <u>one</u> official act: "that is, *expediting* the handling of applications for and issuance of visas to STS Jewels employees." *Id.*, Count 2 (emphasis added).[4] <u>First</u>, the natural and correct grammatical reading of the foregoing phrase is that the official act concerns the *expediting* of the visa interview and issuance processes—not any other aspects of those processes.[5] <u>Second</u>, the Indictment is even clearer regarding this point in other places. *See, e.g.*, *id.* ¶ 9.B (object of the bribery conspiracy was to "obtain *expedited* visa interview appointments and *expedited issuance of visas*") (emphasis added); *id.*, section headings, at 5, 10, 13, 15 ("Expedited Visa Issuances"). <u>Third</u>, read as a whole, the "indictment here cannot be fairly read as charging" bribery to improperly issue visas. *Stirone*, 361 U.S. at

---

[4] Count 3 of the indictment is phrased slightly different: "that is, the expedited handling of applications for and issuance of visas to STS Jewels employees." Indictment, Count 3. However, the proper reading of this admittedly awkward wording still demonstrates that the article and adjective—"the expedited"—modify both the phrases "handling of applications for" and "issuance of." It is a well-recognized rule of grammar that "an adjective at the beginning of a conjunctive phrase applies equally to each object within the phrase. In other words, the first adjective in a series of nouns or phrases modifies each noun or phrase in the following series unless another adjective appears." *Lewis v. Jackson Energy Cooperative*, 189 S.W.3d 87, 92 (Ky. 2005); *see also Wash. Educ. Ass'n v. Nat'l Right to Work Legal Def. Found.*, 187 Fed. Appx. 681, 682 (9th Cir. 2006) (unpublished) (citing THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE ch. 2, ¶ 10 (1996)); *Employers Reinsurance Corp. v. Teague*, 972 F.2d 339 (4th Cir. 1992) (table decision), *text at* 1992 WL 200868. Thus, in an analogous setting, the phrase "direct physical loss of or damage to Covered Property" was construed such that "the words 'direct physical' . . . modify both 'loss of' and 'damage to.'" *Ward Gen. Ins. Servs. v. Employers Fire Ins. Co.*, 114 Cal. App. 4th 548, 554-55 (Cal. Ct. App. 2004).

[5] In reality, persons that receive expedited visa interview appointments only receive "expedited" visas in the sense that they get the visas earlier than if they did not have expedited appointments.

7

217. The entire Indictment is focused on Mr. O'Keefe's alleged efforts to improperly expedite the visa interview and issuance process. *See, e.g.*, *Hitt I*, 107 F. Supp. 2d at 35 ("standard indictment-drafting technique[s] … cannot operate to add or expand the specific acts of deceit beyond those actually set out in the indictment").

In sum, the grand jury indicted a case in which the sole "official act" was the scheduling of visa interview appointments. Although the Indictment makes contextual reference to the overall process of issuing visas, these references cannot be read to support a charge that Mr. Agrawal bribed Mr. O'Keefe to issue visas wrongfully. *See, e.g.*, Indictment ¶¶ 5, 10.A-G.

### 2. The Indictment Does Not Allege Any Corrupt Intent That Supports the Government's Recently Adopted Theory

For the Indictment to be sufficient, it must allege, *inter alia*, that defendants acted corruptly. For an act to be done "corruptly," the government must make two different, but related allegations in the Indictment, and support those allegations "with such a statement of the facts and circumstances as will inform [defendants] of the specific offense … with which [they are] charged." *United States* v. *Hsia*, 24 F.Supp.2d 33, 55.

<u>First</u>, the government must allege that "the briber is the *mover or producer* of the official act." *Brewster*, 506 F.2d at 72 (emphasis added). In other words, bribery requires a *quid pro quo* or "two-way nexus" between an "intent to affect the *future actions* of a public official through giving something of value, and receipt of that thing of value then *motivat[ing]* the official act." *United States* v. *Schaffer*, 183 F.3d 833, 841 (D.C. Cir. 1999), *vacated as moot by Presidential pardon*, 240 F.3d 245 (D.C. Cir. 2001) (emphasis added); *see also United States* v. *Alfisi*, 308 F.3d 144, 149 (2d Cir. 2002) ("[B]ribery involves the giving of value to *procure* a specific official action from a public official.") (emphasis added). Thus, for example, payments for *past* acts are not bribes. *See Schaffer*, 183 F.3d at 841. Gifts made out of friendship or for

8

social reasons are not bribes. *See United States* v. *Standefer*, 610 F.2d 1076, 1080 (3d Cir. 1979), *aff'd*, 447 U.S. 10 (1980). And "[p]ayments … for acts that would have been performed in any event" are not bribes. *United States* v. *Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (quoting *United States* v. *Campbell*, 685 F.2d 141, 148 (D.C. Cir. 1982)).

Second, the government must also allege and prove that defendants' actions were "done voluntarily and deliberately … with the purpose of either accomplishing an unlawful end or unlawful result or of accomplishing some otherwise lawful end or lawful result by any unlawful method or means." O'MALLEY, GRENIG, AND LEE, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 27.09 (2007); *see also United States* v. *Aguilar*, 515 U.S. 593, 616-17 (Scalia, J., dissenting).

The government recognizes that issuing a visa and scheduling a visa interview appointment are two very separate and very different things. *See, e.g.*, Docket No. 35, Ex. 1, 1/23/07 Ltr. from B. Johnson to T. Green at 9 ("requests for expedited visa interviews …"[are] *not essential to the determination of whether or not the visa is issued.*") (emphasis added). The issue of scheduling an appointment "only affects how fast a person can see someone at the consulate." *Id*. Up until recently, the government consistently had asserted that Mr. Agrawal had been indicted for bribing Mr. O'Keefe to expedite visa appointments—not to issue visas.

The Indictment nowhere alleges that Mr. O'Keefe "accomplished an unlawful end or unlawful result" by issuing visas to STS jewels employees. Mr. O'Keefe's job was to interview applicants and issue (or deny) visas. *See* Indictment ¶ 3. There is no question that Mr. O'Keefe issued visas to some STS Jewels employees. *See, e.g.*, Indictment ¶ 8 (O'Keefe "issued visas"), ¶ 10.F (O'Keefe "issued 21 visas to persons sponsored by STS Jewels"). But the Indictment does not allege that there was anything wrong with the issuance of those visas (or the

9

manner in which they were issued). Nor does the Indictment allege that the visa applicants should not have received visas.

Each STS Jewels employee in question already was eligible to obtain a U.S. visa at the time he or she arrived Toronto. Long before any appointment in Toronto, the United States Bureau of Citizenship and Immigration Services ("CIS") (formerly INS) had legally authorized and approved each of the visa applicants to work for Mr. Agrawal's company in the United States. CIS's approval of an individual's immigration status (*e.g.*, H-1B status) constitutes *prima facie* evidence of that person's approvability for an entry visa. A consular officer does not have any legal basis to deny a visa to a CIS-approved applicant, absent legitimate security or admissibility concerns that arise during the interview.[6] There is no allegation in the Indictment that any such concerns were raised in the interview of any STS Jewels employee.

There is also no allegation in the Indictment that Mr. O'Keefe was bribed to corruptly use "unlawful method or means" to issue visas to STS Jewels employees. Once at the consulate, all the STS applicants waited for hours for their interview, submitted documentation, underwent fingerprinting and security checks, and then answered the questions of *various* consular employees. Other than the "expediting" of the appointments, there is no allegation that the visa issuance process was corrupted or compromised.

There is an allegation that Mr. O'Keefe "ensured to the best of his ability that he, rather than any other consular officer, reviewed the documentation and conducted the personal

---

[6] There is no allegation in this case that any STS Jewels employee raised any type of security or admissibility concern. CIS has not revoked the immigration status for any of these individuals. Most of these individuals are still present in the United States and travel abroad regularly. They are subject to inspection (including questioning) every time they re-enter the United States, and their names are checked in government databases each time they re-enter the United States. Moreover, consular officers other than Mr. O'Keefe issued visas to STS employees. *See, e.g.*, Indictment ¶ 11(17).

interview of each prospective STS Jewel employee." Indictment ¶ 10.E. As written, this statement seems to imply something sinister, but it falls short of an allegation that the visas should not have been issued or that the visa process was corrupted or undermined. The Indictment similarly alleges that Mr. O'Keefe had "a duty to refrain from issuing visas to persons that he knew or with whom he had a personal relationship." *Id*. ¶ 5. But the Indictment never alleges that Mr. O'Keefe knew or had a personal relationship with any of the visa applicants—because he did not. There is nothing in the Indictment that would support going forward on a theory that the visas were improper, improperly issued, or would not have been issued in this manner absent some corrupt conduct by Mr. O'Keefe. *See, e.g.*, *Gatling*, 96 F.3d at 1522.

### 3. Mere References to "Visa Issuances" Do Not Create an Independent Bribery Charge

The Indictment does make references to "issuing visas." *See, e.g.*, Indictment ¶¶ 8, 9B, 10.F, 11(1). Such references, however, are neither targeted as "official acts" by the Indictment, nor tethered to any allegation that defendants acted corruptly with respect to visa issuances. *See supra* § III.B. In fact, the Indictment completely fails to allege any facts regarding a "conspiracy" to seek and issue visas corruptly. This is so, even though the government asserts it has "charged [defendants] pursuant to a three-count 'speaking indictment,' which outlines the allegations *in great detail*," See **Ex. 1** (emphasis added).

Paragraph 9.B of the Indictment sets forth the allegedly corrupt intent of Mr. Agrawal: "Sunil Agrawal [sought] to avoid established procedures for *scheduling visa interview appointments* and *obtain expedited visa interview appointments* and *expedited issuance of visas*, thereby saving him, his business and his employees time and money." Indictment ¶ 9.B (emphasis added). This allegation makes clear that the purpose and objective of the alleged bribe was to shorten the time that is would take them to "see someone at the consulate." Docket

11

No. 35, Ex. 1, 1/23/07 Ltr. from B. Johnson to T. Green at 9.  That is what the Indictment says and that is what the prosecutors have previously affirmed.

The government's perception that its evidence has taken a turn for the worse[7] is not a basis to broaden the theory of the case beyond what the grand jury indicted.  There are no allegations in the Indictment that would support a claim that Mr. Agrawal bribed Mr. O'Keefe to improperly issue visas.  Accordingly, because the government's changing articulation of its case impermissibly broadens the scope of the Indictment, and to avoid unfair surprise, Mr. Agrawal respectfully requests that the Court dismiss Counts 1, 2 and 3 to the extent the government attempts to interpret those Counts as alleging bribery to cause the issuance of visas, rather than obtain expedited interview appointments.

**IV.    CONCLUSION**

For the foregoing reasons, Mr. Agrawal respectfully requests that the Court grant his First Motion to Dismiss.


Dated:  November 17, 2007                     Respectfully submitted


                                              _____/s/_____
                                              Thomas C. Green (D.C. Bar #14998)
                                              Mark D. Hopson (D.C. Bar #394338)
                                              David J. Ludlow (D.C. Bar #489136)
                                              SIDLEY AUSTIN LLP
                                              1501 K Street, NW
                                              Washington, DC 20005
                                              202-736-8000

---

[7] Discovery has shown that expediting visa appointments was not "out of the ordinary … [and] was [not] done with an evil intention."  See Sept. 12, 2007 Hr'g Tr. at 20-21 ("If the same thing is done for everyone, and what these gentlemen did is not exceptional, they're not guilty.  Isn't that true?").  In fact, granting expedited visa appointments was the rule, rather than the exception, at the consulate.