IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       v.<br><br>MICHAEL JOHN O'KEEFE, SR. and<br>SUNIL AGRAWAL,<br><br>       Defendants. | )<br>)<br>)<br>) Criminal Case No 1:06-cr-00249-PLF/JMF<br>)<br>)<br>)<br>)<br>) |

**REPLY TO GOVERNMENT OPPOSITION TO DEFENDANT
AGRAWAL'S MOTION TO DISMISS THE GOVERNMENT'S
CONSTRUCTIVE AMENDMENT OF THE INDICTMENT**

The Indictment alleges bribery to perform *one* official act—the *expediting* of the visa interview appointment process. In light of exculpatory discovery produced by the consulates, the government is now seeking to broaden the Indictment beyond what the grand jury charged. *See, e.g.*, Gov't Opp. at 6. This constructive amendment of the Indictment is impermissible. *See Stirone* v. *United States*, 361 U.S. 212, 219 (1960).

**I.   THE GOVERNMENT IS SEEKING TO IMPERMISSIBLY BROADEN THE INDICTMENT**

   **A.   The Bribery Counts (Counts 2 and 3)**

Counts 2 and 3 allege bribery pursuant to the "official act" clause of the bribery statute.[1] Those counts carefully and expressly define the official act that Mr. Agrawal is alleged to have influenced: "[D]efendant Sunil Agrawal did … promise to give things of value … to influence the public official in the performance of <u>an</u> official act, that is, *expediting the handling*

---

[1] *Compare* 18 U.S.C. § 201(b)(2)(A) and (b)(1)(A) *with* § 201(b)(1)(B), (1)(C), (2)(B), (2)(C); *Valdes* v. *United States*, 475 F.3d 1319, 1327 ("the bribery provisions cover two *additional* predicate clauses").

*of applications for and issuance of visas.*" Indictment, Count 2 (emphasis added); Def's Mem. at 7-8.

The prosecution now asserts that the grand jury "*contemplate[d]*" indicting—and did indict—bribery with respect to "a *number* of official acts, including the timely approval of expedited appointments, facilitation of the appointment process, … scheduling of appointments, the processing of the visa applications, the conducting of a consular interview of the applicant, and the final determination of whether to issue the visa." Gov't Opp. at 6 (emphasis added). That is not what is charged in Counts 2 and 3.

First, the Indictment references "an" official act. Contrary to the government's reading, "an" means "one." *See* WEBSTER'S II NEW RIVERSIDE UNIV. DICT. 64, 103 (1984) ("WEBSTER'S"). Although a public official may perform "an" official act multiple times (*e.g.*, voting), the Indictment's use of the indefinite article "an" cannot reach multiple types of acts. *See* Gov't Opp. at 6.

Second, "expedite" means "to speed up the progress of." *See* WEBSTER'S at 454. In this case, the official act charged is "expediting the handling . . . and issuance of visas." Indictment, Counts 2 and 3. By definition, expediting denotes acceleration of a process, not the substantive decisionmaking associated with that process. In fact, the government conceded—at an earlier date—that the Indictment was focused on expediting: the scheduling of a visa interview appointment "only affects how fast a person can see someone at the consulate" and not "whether … the visa is issued." *See* 1/23/07 Ltr. from B. Johnson to T. Green at 9 [Docket No. 35, Ex. 1]. The government's current arguments cannot be reconciled with the grand jury's charges, its prior concessions, and the ordinary meaning of the term expedite. *See* Gov't Opp. at 6-7 (essentially arguing that performance of every aspect of Mr. O'Keefe's job is an official act,

including "the final determination of whether to issue the visa");[2] *Cf.* Def. Mem., Ex. 1, at 1 (not defining any other official acts and stating that Mr. O'Keefe's wrongful conduct concerns the provision of *expedited* visa appointments and visa issuances).

Finally, neither Count 1 nor Count 2 incorporates by reference any of the allegations outside those Counts. *See United States* v. *Fulcher*, 626 F.2d 985, 988 (D.C. Cir. 1980) ("Each count in an indictment is regarded as if it was a separate indictment … [and] must stand on its own, and cannot depend for its validity on the allegations of any other count not specifically incorporated."). Thus, none of the allegations Count 1 modify or define the "official act" element as alleged in Counts 2 and 3. As a result, virtually all the government's Opposition arguments are misdirected. *See* Gov't Opp. at 5-7 (citing extensively from Count 1 in an effort to broaden the official act element alleged in Counts 2 and 3).

### B.  The Conspiracy Count (Count 1)

Count 1 of the Indictment is characterized by the prosecution as a "speaking indictment." For fourteen pages (approximately two-thirds of the Indictment), Count 1 quotes or paraphrases from alleged communications between the defendants (hereinafter "Alleged Facts"), which the government presents as circumstantial evidence of the alleged conspiracy. But nowhere do the Alleged Facts define *other* "official acts," and nothing in those pages defines the "official act" element differently from the definition in Counts 2 and 3. The government's current argument that the Indictment charges a conspiracy to bribe Mr. O'Keefe to do virtually every aspect of his job cannot be reconciled with the language of Count 1 and should not be sustained. *Valdes* v. *United States*, 475 F.3d 1319, 1323 (D.C. Cir. 2007) (rejecting the

---

[2] "[T]he description provided in the counts contemplates a number of official acts … [and] encompasses a variety of actions." Gov't Opp. at 6.

3

government's argument that "every action within the range of official duties *automatically* satisfies § 201's [official act] definition").

<u>First</u>, the Overt Act subsection headings clearly set forth the *quid pro quo* charged in Count 1. These headings allege that all of the things of value allegedly were given for "*Expedited* Visa Issuances" (Indictment, p. 5) (emphasis added); "*Expedited* Visa Issuances" (*id*. at 10) (emphasis added); "*Expedited* Visa Issuances" (*id*. at 13) (emphasis added); "*Expedited* Visa Issuances" (*id*. at 15) (emphasis added).[3] The modifier "expedited" in these headings is not superfluous. *See* Gov't Opp. at 5-7.

<u>Second</u>, the *quid pro quo* and official act charged in Count 1 is consistent with what is expressly charged in Counts 2 and 3. The "official act," as described in Count 1, concerns Mr. O'Keefe's alleged "avoid[ance] of established procedures for *scheduling* [*e.g.*, expediting] visa interview appointments." Indictment ¶ 9.B (emphasis added).

<u>Third</u>, the Indictment is clear in alleging Mr. Agrawal's intent, and those allegations are all based upon "expediting" and not upon the substantive issuance of visas. *See* Indictment ¶ 9B. The Indictment asserts, at length, Mr. Agrawal's intent to "speed up the progress": (i) "to avoid established procedures for scheduling visa interview appointments … thereby saving … time"; (ii) to "obtain expedited visa interview appointments"; (iii) "to obtain … expedited issuance of visas." *Id*.

<u>Finally</u>, although the Indictment does contain references to the "issuance" of visas, all of those allegations either (i) provide context to the Indictment and the process that was

---

[3] The headings are not surplusage; they are the only substantive allegations added by the government in the overt act section of Count One. *Cf. United States* v. *Hitt*, 107 F. Supp. 2d 29, 32 n.3 (D.D.C. 2000), *aff'd,* 249 F.3d 1010 (D.C. Cir. 2001). Moreover, the headings are consistent with, and explain, the terminology used in other parts of Count 1. Thus, when read as a whole, the "official act" alleged in the Count 1 conspiracy concerns Mr. O'Keefe's expediting of the appointment process. *See Randle* v. *United States*, 113 F.2d 945, 947 (D.C. Cir 1940) (counts—as opposed to the entire charging document—should be read as an integral allegation); *Fulcher*, 626 F.2d at 988 (distinguishing *Randle* on this basis).

allegedly improperly expedited; or (ii) are imprecise and colloquial references to the expedited appointment process.[4]  For example, the Opposition includes a lengthy block quote that the government characterizes as an allegation that Mr. O'Keefe improperly issued visas.  *See* Gov't Opp. at 7.  But even though the language is colloquial, it is clear that the discussion is focused on expediting visa interview appointments and not on avoiding the substantive visa process.  *See id*. ("I don't foresee any problems as all of your cases in the past have been clearly approvable"); *cf*. Indictment ¶ 9.B.  General and imprecise references to "issuing visas" in the Indictment, *see* Gov't Opp. at 5-6, should not broaden more specific characterizations of the charged conduct and the clear overall aim of the Indictment.[5]  *See, e.g.*, *Dong* v. *Smithsonian Inst*., 125 F.3d 877, 879 (D.C. Cir. 1997) (applying the canon of reverse *ejusdem generis*).

## II.   THE INDICTMENT'S INTENT ALLEGATIONS CANNOT EXPAND THE INDICTMENT'S OFFICIAL ACT ALLEGATIONS

Consistent with its efforts to expand the official act allegations, the government now argues that the intent element is satisfied by alleging that Mr. Agrawal acted with the intent of paying Mr. O'Keefe to do nothing more than properly perform his official functions.  *See* Gov't Opp. at 9 ("What was unlawful was the payment and receipt of things of value for that official act").  This argument misconstrues the intent element of the bribery statute.  But even assuming that it would satisfy the scienter requirement of the law, such allegations cannot modify the scope of the "official act" element of the offense.

---

[4] Many of the references are contextual; they describe how the "expediting" of appointments related to Mr. O'Keefe's job and the underlying process.  *See* Def's Mem. at 11-12; Indictment ¶ 1 (it was Mr. O'Keefe's job to "issue visas to qualified applicants.").

[5] The government cites to paragraph 9.A. to demonstrate the Indictment also charges an official act of "issuing visas."  Indictment ¶ 9.A ("… in exchange for issuing visas to benefit defendant Sunil Agrawal").  Whatever this loose language means, it cannot have the meaning the government suggests.  The Indictment makes clear that the benefit allegedly sought by Mr. Agrawal was "expedited visa interview appointments [,] expedited issuance of visas," and "saving … time and money."  *Id*. ¶ 9.B.

5

Although other statutes may target conduct like supplementing the salary of a public official, *see* 18 U.S.C. § 209, the bribery statute requires a specific intent to do "the evil sought to be prevented … by attempting to influence an official to *depart* from conduct deemed essential to the public interest." *United States* v. *Jacobs*, 431 F.2d 754, 759 (2d Cir. 1970) (emphasis added); *see also United States* v. *Alfisi*, 308 F.3d 144, 154-158 (2d Cir. 2002) (Sack, dissenting); 18 U.S.C. § 201(b)(2)(B) (influencing the public official to commit *fraud*); *id*. § 201(b)(1)(C) (inducing the public official to *violate* a lawful duty). Thus, the D.C. Circuit has held that "[p]ayments to a public official for acts that would have been performed in any event … are probably illegal gratuities rather than bribes." *United States* v. *Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (quoting *United States* v. *Campbell*, 685 F.2d 141, 148 (D.C. Cir. 1982)). In other words, the intent element requires that the government prove that the defendant intended to "accomplish[] an unlawful end or unlawful result *or* … [a] lawful end or lawful result by any unlawful method or means." *See* Def's Mem. at 9-11.

Moreover, the government's new "intent" argument—that there is no need to allege or prove that Mr. Agrawal intended Mr. O'Keefe to do anything more than properly perform his job—is contrary to the Indictment, which generally alleges that Mr. Agrawal intended to influence Mr. O'Keefe to "act and fail to act in violation of his lawful duties." Indictment ¶ 8. But again, the only such "lawful duty" that allegedly was avoided was "a*void[ing] established procedures for scheduling visa interview appointments.*" *Id*. ¶ 9.B. The prosecution is attempting to broaden the official act and *quid pro quo* allegations beyond the charges set forth in the Indictment—and that is something the Constitution clearly prohibits.

## III. CONCLUSION

        For the foregoing reasons, Mr. Agrawal respectfully requests that the Court grant his First Motion to Dismiss.

Dated: December 3, 2007        Respectfully submitted

                                  _____/s/_____
                                  Thomas C. Green (D.C. Bar #14998)
                                  Mark D. Hopson (D.C. Bar #394338)
                                  David J. Ludlow (D.C. Bar #489136)
                                  SIDLEY AUSTIN LLP
                                  1501 K Street, NW
                                  Washington, DC 20005
                                  (202) 736-8000