

U.S. Department of Justice

Jeffrey A. Taylor
United States Attorney

*District of Columbia*

*Judiciary Center*
*555 Fourth St., NW.*
*Washington, D.C. 20530*

April 30, 2008

BY U.S. MAIL AND FACSIMILE

Thomas C. Green, Esquire
Sidley Austin LLP
1501 K Street, N.W.
Washington, D.C. 20005

      Re:  United States v. Michael John O'Keefe, Sr. and Sunil Agrawal,
           Criminal No. 06-CR-00249 (JMF/PLF)

Dear Mr. Green:

      This letter is in response to your letter of April 4, 2008, in which you seek additional discovery in the above-captioned matter and in reference to conversations that the government has had with defense counsel on this matter. The April 4, 2008, request seeks documents related to all visa applications concerning STS Jewels, Inc.-affiliated individuals identified by initials in the superseding indictment. In particular, this request included all visa applications submitted at U.S. Department of State posts around the world from September 1997 to March 2008, as well as all "documents related" to these visa applications.

      You were previously provided with all of the U.S. Consulate in Toronto visa applications and supporting information for the individuals identified by initials in the original indictment (which are the same as in the superseding indictment). All of these individuals are/were employees or family members of STS Jewels or affiliated companies. The documents previously provided relate to the approval of expedited visa appointments and granting of visas by Co-Defendant Michael John O'Keefe, Sr., at the request of Defendant Sunil Agrawal.

      As a preliminary matter, according to the U.S. Department of State, visa applications prior to September 2001 are in all likelihood no longer in existence because of the retention policy at the time. Moreover, the government does not believe that applications and documents related to applications for visas by STS Jewels-affiliated persons at posts other than the Toronto consulate during the time frame specified in the superseding indictment are relevant or material to this case.

      Moreover, searching for such historic and post-indictment applications and documents from locations such as Bangkok, Thailand, and Mumbai, India, would be a mammoth undertaking. Nonetheless, the government will provide to the defendant, subject to a protective

order, a printout of the Consolidated Computer Database ("CCD") for the requested visa applications. These CCD printouts will provide, among other things, information about the date and location visas were issued. The government will further stipulate at trial, if the Court later makes a determination of the relevancy and admissibility of the evidence at trial, that the visas were previously or subsequently issued by the U.S. Department of State for the STS Jewels-affiliated persons and confirm the date and location of the issuance. This offer of entering into a stipulation does not render the information relevant or material to the instant matter, nor does the government concede that such information is relevant or material to the case.

Furthermore, the government does not believe that information regarding "post-visa issuance (i.e., April 1, 2006, to March 25, 2008)" Department of State e-mails, communications, memoranda, analyses or other documents concerning or mentioning any of the STS Jewels-affiliated individuals referenced above is relevant or material.

The government will not provide work authorization applications/materials submitted to the U.S. Citizenship and Immigration Services ("CIS"), U.S. Department of Homeland Security, or any predecessor agency, including the Immigration and Naturalization Service ("INS"). Documents or records of petitions for work eligibility are outside the scope of the charges and are not relevant or material to the instant matter. The government is willing to stipulate, should the need arise, that H and L visas are petition-based and that STS Jewels would have had to file a petition of eligibility prior to the visa application of any of its employees. As the government has previously noted, CIS only makes a determination as to whether a petitioner is eligible to apply for a certain category of visa. But CIS approval only constitutes evidence of eligibility, not approvability for a visa. Interviewing consular officers like Co-Defendant O'Keefe are charged with the responsibility of granting or denying an application for a visa for all applicants – including CIS-approved persons – based upon the totality of information they gather, which includes verifying the identity of the applicant, and the veracity of information provided on the application and by the applicant during an interview. Thus, a consular officer can deny a CIS-approved applicant, and a visa application interview is not merely a rubber stamp of approval.

If you have any questions or would like to discuss these issues further, please contact us.

Sincerely,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: Brenda J. Johnson
Denise Cheung
Assistant United States Attorneys
National Security Section

cc: Bernard S. Grimm, Esquire
Cozen O'Connor
1627 I Street, NW
Washington, D.C. 20006

-2-