**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal Case No 1:06-cr-00249-PLF/JMF |
| MICHAEL JOHN O'KEEFE, SR. and | ) |
| SUNIL AGRAWAL, | ) |
| | ) |
| Defendants. | ) |

**REPLY TO GOVERNMENT'S OPPOSITION TO
MR. AGRAWAL'S THIRD MOTION TO COMPEL**

The government's sole contention in opposing Defendants' Third Motion to Compel is that the documents and information requested by defendants in connection with the additional charges set forth in the Superseding Indictment are "not material, favorable or exculpatory." Gov't Opp. at 8. The government's arguments are inapposite and incorrect for several reasons.

*First*, there is, unquestionably, a significant substantive difference between alleging that someone paid bribes to expedite the scheduling of a visa interview appointment (original Indictment) and alleging that someone paid bribes to procure the issuance of a visa (Superseding Indictment). *See* Superseding Indictment, Count 2 (alleging "issuance of visas" as a second official act).[1] Bribery of a government official to secure the issuance of a visa requires proof that a government official was paid to induce a favorable *substantive* decision which would not otherwise have been made absent the bribe. *See United States* v. *Gatling*, 96 F.3d 1511,

---

[1] This difference is apparent, for example, by the fact that another U.S. bribery statute recognizes that it is not bribery if a payment was made to expedite "routine governmental action," like "processing governmental papers such as visas." 15 U.S.C. §78dd(f)(3). The rationale being that bribery statutes are designed to prevent the corruption of official government decision-making (*i.e.*, "official acts"), not "the misuse of government resources," *Valdes* v. *United States*, 475 F.3d 1319, 1323-24 (D.C. Cir. 2007) (rejecting the argument that "every action within the range of official duties automatically satisfies § 201's [official act] definition"); *see also United States* v. *Alfisi*, 308 F.3d 144, 154-158 (2d Cir. 2002) (Sack, dissenting).

1522 (D.C. Cir. 1996) (quoting *United States* v. *Campbell*, 685 F.2d 141, 148 (D.C. Cir. 1982)) ("[p]ayments to a public official for acts that would have been performed in any event ... are probably [not] bribes"); *see also* Docket Nos. 85 & 87 (discussing in detail 18 U.S.C. § 201's intent requirement). Indeed, other federal bribery-for-visa cases confirm that it is counterintuitive, if not nonsensical, to allege that Mr. Agrawal paid bribes (or had any incentive to do so) to obtain visas his employees would have routinely received.[2] There can be no question that defendants' new discovery requests are narrowly calculated to obtain information which will tend to negate any inference that Mr. Agrawal intended to bribe Mr. O'Keefe to issue visas based on an apprehension that his employees would be found ineligible for entry into the United States. *See* Ltr. to B. Johnson [Docket No. 117, Ex. 1].

*Second*, the government's argument that it was not "a forgone conclusion that the issuance of … visas 'will occur anyway'" is similarly askew. Gov't Opp. at 8. The entire purpose of defendants' discovery requests is to obtain evidence that will support a conclusion that Mr. Agrawal's employees were legally entitled to the visas in question.[3] Certainly post-

---

[2] *See, e.g. United States* v. *Estrada*, 261 Fed. Appx. 203, 205-06 (11th Cir. 2008) (government official made false statements in his visa referral and about the immigration status of applicant.); *United States* v. *Ozcelik*, 527 F.3d 88, 91 (3d Cir. 2008) (government official falsified information in government computer system so applicant would not appear out of status); *United States* v. *Christ*, 513 F.3d 762, 770-72 (7th Cir. 2008) (government official provided visa referrals to nonqualified applicants and instructed applicants to enter false information on their applications); *United States* v. *Carroll*, 346 F.3d 744, 745 (Public official "coordinated the illegal sale of hundreds of fraudulent visas"); *United States* v. *Kahan*, 479 F.2d 290, 290-92 & n.10 (2d Cir. 1973) (Public official used position to obtain payment for "improper extension" of visa permits; co-conspirator knowingly entered false information on applications); *Cf. United States v. Lazarre*, 14 F.3d 580, 581 (11th Cir. 1994) (Defendant paid public official to grant bond or parole of immigrants who were legally ineligible); *United States v. Hsieh Hui Mei Chen*, 754 F.2d 817, 822 (9th Cir. 1985) (Defendants offer bribes for illegal issuance of green cards).

[3] In its Opposition the government also makes misleading assertions about the visa issuance process and the facts of this case. Indeed, it is the government, not the defendant, that assumes that the visa approval process is the same for each type of visa. *See, e.g.*, Gov't Opp. at 12 & n.12 (*i.e.*, some STS Jewels employees previously have been denied visas). For example, a consular officer's decision/discretion about whether to grant or deny a business visa (B1/B2) is fundamentally different from that officer's decision/discretion about whether to grant or deny a petition-based visa (H1-B, etc.). *See, e.g.*, 9 Foreign Affairs Manual 41.53 N2.2; Mem. in Support of Mr. Agrawal's 3d Mot. to Compel (Amended) at n.2 [Docket No. 118]. Indeed, based on the government's incomplete discovery response of CCD printouts, it appears that in May 2008—*immediately after Mr. Agrawal made his April 4, 2008 discovery requests*—the government intentionally attempted to deny visas to at least two STS employees with H1-B authorizations, but could not ultimately do so. *See, e.g.*, 9 FAM 41.53 N1.3 (consular officers cannot deny H1-B applicants under an "intending immigrant presumption"). The Opposition's suggestion that a consular officer can deny an H1-B visa for any reason is flatly incorrect. *Cf.* Gov't Opp. at 15 ("Since a consular officer can deny a CIS-approved applicant, visa application interviews are not merely a rubber stamp of approval") *with* 9 FAM 41.53 N2.2.

indictment analyses conducted by the government and related e-mails regarding the propriety of the visas granted by Mr. O'Keefe (*i.e.*, the government's new bribery theory) are material to that end. Likewise, internal documents and communications from Citizenship and Immigration Services ("CIS") relating to the eligibility of STS Jewels' employees to obtain work authorizations or green cards—*i.e.*, findings that the State Department must accept (*see* 9 FAM 41.53 N2.2)—are material to the defense. Moreover, the need to show the validity of the visas is heightened by the fact that the government is attempting to treat this as a "national security" case. *See* Department of Justice Press Release (Aug. 25, 2006), *available at* http://www.usdoj.gov/usao/dc/Press_Releases/2006_Archives/Aug_2006/06307.html.

*Third*, the government's "equally available" argument is a red-herring. It goes without saying that the government need not produce any discovery which it can prove was sent or received by Mr. Agrawal or his company. *See* Gov't Opp. at 15 (complaining that some of the requested information may be equally available to Mr. Agrawal).

*Fourth*, the government incorrectly asserts that the work product protection shields statements, documents, and materials prepared by State Department employees (who are potential witnesses). But "the work product protection is not absolute," *United States* v. *Nobles*, 422 U.S. 225, 239 (1975), and is trumped by the government's *Brady* obligations. *See* Fed. R. Crim. Pro. 1974 Advisory Comm. Notes (*Brady* "requires the disclosure of evidence favorable to the defendant. This is, of course, not changed by [Rule 16(a)(2)]"); WRIGHT AND MILLER, 2 FEDERAL PRAC. & PROC. § 254.2 (Because *Brady* is based on the Constitution, it overrides … the work product immunity for discovery in Rule 16(a)(2)"); *see also Safavian,* 233 F.R.D. at 16 ("Brady always trumps both Jencks"). In this case, the government simply can not dispute that documents which tend to show that the subject visas were validly issued are clearly exculpatory evidence and must be disclosed.

*Finally*, at bottom, the rest of the Opposition's arguments presuppose that the prosecutors have already proven the elements of the charged conduct (*e.g.*, *quid pro quo*) regardless of what the requested materials may show.[4] The government may disagree with defendants about the ultimate probative value of the requested discovery, but it cannot simply conclude and declare that the evidence "would not make a difference" in order to justify its refusal to comply with our outstanding discovery requests. *Safavian*, 233 F.R.D. 12, 15-16 (D.D.C. 2005). In fact, the government must produce the discovery whether it believes it is exculpatory or inculpatory. *See id.* at 15 (Rule 16 covers inculpatory information).

I.   CONCLUSION

For all of these reasons, and the reasons set forth in our previously filed Memorandum of Law, Mr. Agrawal respectfully requests that the Court compel the government to respond fully to Mr. Agrawal's April 4, 2008 discovery requests.

Dated: July 18, 2008

Respectfully submitted,

_____/s/_____
Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
David J. Ludlow (D.C. Bar #489136)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005

---

[4] In other words, the government's arguments all implicitly assume that the *quid quo pro* element has been proven and then argue that the requested discovery would not provide a "defense." These arguments avoid rather than address the fundamental point that the documents in question would be relevant to proving the presence or absence of a *quid pro quo*. *See, e.g.*, Gov't Opp. at 9-11 ("it is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act"); *id.* at 10-11 (the fact that consular officials schedule expedited visa appointments and issue expedited visas without receiving bribes in no way exculpates the defendants *from engaging in bribery...*"); *id.* at 11 ("evidence that … expedited visas are granted without bribery would not be relevant or material to a charge for engaging in bribery"); *id.* ("By engaging in bribery, Defendant Agrawal was ensuring the issuance of visas at his convenience"); *id.* ("Even assuming *arguendo* that it could be established that those STS Jewels persons would have been issued visas without Co-Defendant O'Keefe's intervention … that still would not make the information exculpatory or material").

4