# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>     **v.**<br><br>**MICHAEL JOHN O'KEEFE, SR. and SUNIL AGRAWAL,**<br><br>          **Defendants.** | **Crim. No. 06-249 (PLF/JMF)** |

## MEMORANDUM OPINION

Currently pending and ready for resolution are defendant Sunil Agrawal's <u>Third Motion to Compel Discovery</u> [#117] and <u>Motion to Amend Memorandum of Law in Support of Mr. Agrawal's Third Motion to Compel</u> [#118].  For the reasons stated herein, his motion to compel will be denied and his motion to amend will be granted.

## DISCUSSION

A.     <u>Introduction</u>

The indictment charges that the defendant, Michael John O'Keefe, Sr., when employed by the Department of State in Canada, received, *quid pro quo,* gifts and other benefits from his co-defendant, Sunil Agrawal, for expediting visa requests for employees of Agrawal's company, STS Jewels.[1]  More specifically, the superseding indictment at paragraph 9 A-C charges that the objects of the conspiracy were:

> A.     for the defendant MICHAEL JOHN O'KEEFE, Sr. to receive travel, gifts, and other personal benefits in exchange for expediting visa interview appointments and/or issuing visas to benefit defendant SUNIL AGRAWAL and his business, STS Jewels.

---

[1] <u>See</u> <u>United States v. O'Keefe</u>, 537 F. Supp. 2d 14 (D.D.C. 2008); <u>United States v. O'Keefe</u>, 521 F. Supp. 2d 59 (D.D.C. 2007); <u>United States v. O'Keefe</u>, 509 F. Supp. 2d 33 (D.D.C. 2007).

B.       for the defendant SUNIL AGRAWAL to obtain expedited visa interview appointments for his employees and persons sponsored by STS Jewels, thereby saving him, his business and his employees, time and money.

C.       for the defendant SUNIL AGRAWAL to obtain the issuance of visas for his employees and persons sponsored by STS Jewels, thereby saving him, his business and his employees, time and money.

<u>Indictment</u> [#98] ¶ 9.

B.    <u>The Discovery Demands</u>

There has been extensive discovery in this case but Agrawal now seeks more. According to his motion, there are 21 STS employees at issue and as to these Agrawal wants the following information:

> (1) State Department documents concerning visa applications and visas issued to the twenty-one STS Jewels employees, wherever or whenever issued; (2) post-visa issuance (*i.e.*, post-Indictment) State Department analysis, emails, or other documents concerning the twenty-one STS Jewels employees; and (3) documents in the possession of United States Citizenship and Immigration Services ("CIS") concerning the work authorizations or permanent residence status (*e.g.*, H-1, L-1, Green Cards) of the twenty-one STS Jewels employees.

<u>Memorandum of Law in Support of Mr. Agrawal's Third Motion to Compel Discovery</u> ("Memorandum") [#117] at 2-3.

To this Memorandum Agrawal attaches a letter to his counsel from the attorneys for the United States in which they offer to provide a printout of the Consolidated Computer Database ("CCD") for the 21 visa applications. <u>Id.</u> at Exhibit 1, page 2. In the same letter the government offered to stipulate that "the visas were previously or subsequently issued by the U.S. Department of State for the STS Jewels-affiliated persons and confirm the date and location of the issuance." <u>Id.</u> The government, however, refused to provide (1) the "information regarding

'post-visa issuance (i.e., April 1, 2006, to March 25, 2008)' Department of State e-mails, communications, memoranda, analyses or other documents concerning or mentioning any of the STS Jewels-affiliated individuals referenced above" and (2) "work authorization applications/materials submitted to the U.S. Citizenship and Immigration Services ('CIS'), U.S. Department of Homeland Security, or any predecessor agency, including the Immigration and Naturalization Service ('INS')" and argues that "[d]ocuments or records of petitions for work eligibility are outside the scope of the charges and are not relevant or material to the instant matter." Id.

C.     Names of Employees

The government has produced the CCD in redacted form and explains that it has provided printouts pertaining to the visa applications by STS employees, identified by initials in the indictment, anywhere in the world. Government's Opposition to Defendant Agrawal's Third Motion to Compel Discovery ("Opp.") at 12.  It protests that the only things it redacted were "the names of employees that granted or denied visas to STS Jewels employees at locations outside Toronto and outside the time frame of the conduct alleged in the indictment." Id.

Agrawal accepts the stipulation, but demands that the redacted names of the employees be provided. Memorandum at 6.  I see no need, however, for those names on this record. Agrawal wants to prove that other visa applications were granted in support of his contention that whatever O'Keefe did for Agrawal would have been done in the ordinary course of business and there was nothing extraordinary about what Agrawal is claimed to have achieved thanks to O'Keefe.  The government is willing to stipulate that the visas were ultimately granted, permitting Agrawal to make his point.  That the visa application was granted, let us say by a

particular person other than one in Toronto, at a date beyond the dates of the charged conspiracy and the overt acts charged in the indictment is irrelevant as is knowing that person's identity.

D.     Work Product Problems

Overt act # 28 of the superseding indictment charges the following:

> (28)     On or about May 31, 2005, a consular officer at the Consulate in Toronto was in the process of interviewing P.S.B., S.K.B. and I.S.B., respectively, an STS Jewels employee and his family members. The consular officer was in the process of notifying the family that it would be denying their visas on that day pending an additional inquiry when defendant MICHAEL JOHN O'KEEFE, Sr. appeared and stated that he would be taking over the adjudication of the visas, which he did.

Indictment at page 11.

Agrawal attached to his initial motion to compel a letter in which counsel for the government explained to defendants' counsel the circumstances surrounding this overt act. Third Motion to Compel Discovery [#117] at Attachment A. Agrawal relies on this document to assert that "State Department personnel reviewed the applications and visa issuances for the twenty-one STS Jewels employees *after* the Indictment was handed down, presumably to identify anything improper with respect to the visas." Memorandum at 7 (emphasis in original). Agrawal demands these post-indictment analyses because they are "the best and most direct evidence regarding whether the visas were issued properly and would have been issued—regardless of which consular official was involved." Id.

The government protests that the defendants are misreading Attachment A, which makes no reference to a post-indictment analysis and is not evidence that any such analysis exists. Opp. at 13. The government then argues that Attachment A was only designed to explain the "Superseding Indictment and provides the supporting documentation." Id. It then asserts that it

has provided defendants with all pertinent documents from January 1, 2004 to August, 2006 and that any communications among State Department employees from August 2006 to the present "would necessarily result in work product disclosures and would not be discoverable." Id.

The government's analysis is equivocal in the sense that it does not categorically state whether "'post-visa issuance (i.e., April 1, 2006, to March 25, 2008)' Department of State e-mails, communications, memoranda, analyses or other documents concerning or mentioning any of the STS Jewels-affiliated individuals" exist. It must therefore now examine the pertinent files and state unequivocally whether it is in possession of any documents that would fall within this discovery request, i.e. whether there have come into existence since April 1, 2006 written matter, to include electronically stored information, such as Department analyses, or other documents that concern or mention the 21 employees specified in the discovery request. It must also produce them. If it believes that any of them are privileged and seeks to withhold them, then I will once again[2] borrow a rule from the Federal Rules of Civil Procedure and require the government to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). I expect this document, most commonly called a "privilege log," to so explicitly describe the documents that in camera review is unnecessary. See Victor Stanley, Inc. v. Creative Pipe, Inc., --- F.R.D. ---, 2008 WL 2221841, at *10 (D. Md. 2008). I note that for present purposes, I am assuming that the work product privilege[3] applies in a criminal case and I leave for another day whether such a privilege, if it applies, could trump either the government's discovery obligation

---

[2] United States v. O'Keefe, 537 F. Supp. 2d 14, 19 (D.D.C. 2008).
[3] See Hickman v. Taylor, 329 U.S. 495 (1947).

or its constitutional obligation to produce evidence that would tend to exculpate the defendant.
Those issues may have to be briefed.

E.     Work Authorization Documents

Finally, as noted above, Agrawal demands that the government produce the documents
that concern the work authorizations or permanent residence status of the 21 STS Jewels
employees. Memorandum at 5.  In a lengthy footnote, Agrawal insists that once CIS approves an
applicant's application to work in the United States as a non-immigrant, H-1b status, "a consular
officer does not have any basis to refuse issuance of a visa" if the applicant meets other
requirements. Id. n.2.

The government challenges this interpretation as "nonsensical." Opp. at 14.  It points out
that once CIS has finished its process, it forwards the applicant's visa petition to the Department
of State where a consular officer, like O'Keefe, has the right to deny the visa application even if
CIS has approved the application made to it. Id. at 14-15.  It also points to a regulation that
imposes upon the applicant the burden of proving his or her eligibility for a visa, notwithstanding
CIS's approval of the petition made to it. Id. at 14.  Following the government's logic, whether
or not the STS employees received any necessary approval from CIS has nothing to do with
whether Agrawal bribed O'Keefe to expedite the visa process.  Agrawal provides no answer to
this and it appears that the government's interpretation of the independence of the two systems is
correct, rendering information about the CIS process irrelevant to the process that Agrawal is
charged with corrupting by bribing O' Keefe.

Moreover, Agrawal's demand for such information flows from a flawed legal premise.  A
central theme of his motion is that a charge of bribery cannot stand upon proof that the person
who gave the bribe was entitled to and would have ultimately secured the benefit or license that

the bribe taker got for him.  According to Agrawal, "[i]t goes without saying that no one would bribe a public official to do something that will occur anyway." Memorandum at 4.  Hence, Agrawal argues, since the 21 STS employees would have gotten their visas and would have been permitted to work in the United States whether or not O'Keefe expedited the process, evidence that would permit him to establish that they would have gotten their visas and work permits eventually exculpates him.

To establish that proposition, he places primary reliance upon the quotation in United States v. Gatling, 96 F.3d 1511, 1522 (D.C. Cir. 1996) taken from United States v. Campbell, 684 F.2d 141, 148 (D.C. Cir. 1982) to the effect that payments to a public official for acts that would have been performed any way are probably not bribes. Memorandum at 4.  The full quotation from which Agrawal takes a section is shown in the following quotation from the Campbell case, in that portion of the decision dealing with the difference between taking a bribe and accepting an illegal gratuity:

> One obvious resulting distinction is temporal. "The gratuity section ..., unlike the bribery section ..., applies to past official acts as well as future ones." [citation omitted]  Payments to a public official for acts that would have been performed in any event-whether before or after those acts have occurred-are probably illegal gratuities rather than bribes.  This does not mean, however, that all bribes must inevitably be paid prior to the official act in question.  The statute proscribes offers and promises of bribes as well as the giving of bribes, and it is only logical that in certain situations the bribe will not actually be conveyed until the act is done.

Campbell, 684 F.2d at 148.

Obviously, the court was drawing a temporal distinction between a bribe and giving an illegal gratuity pointing out that "tipping" a public official for an act that he would have performed would be a gratuity rather than a bribe.  The court was certainly not concluding that

paying a public official to perform an official act is not a bribe merely because the public official would have performed that act in any event.

As the government correctly points out, the law of this Circuit is to the contrary, as indicated in the case of United States v. Orenuga, 430 F.3d 1158 (D.C. Cir. 2005). In that case, the District Court instructed the jury that "[i]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act." Id. at 1166. The defendant, who had never actually performed the act for which he agreed to take the bribe, had defended himself on the ground that the government had to prove that he performed the *quid pro quo* for which he had agreed to accept the bribe. The court of appeals, however, rejected his claim that the above quoted instruction was error, citing its earlier decision in Gatling, which in turn quoted Campbell:

> Under 18 U.S.C. § 201(b)(2)(A), a "public official" commits bribery if he or she "directly or indirectly, corruptly demands, seeks, receives, accepts, or agrees to receive or accept anything of value personally or for any other person or entity, in return for ... being influenced in the performance of any official act." The Supreme Court has made it clear that the "acceptance of the bribe is the violation of the statute, not performance of the illegal promise." United States v. Brewster, 408 U.S. 501, 526, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). In other words, "[t]he illegal conduct is taking or agreeing to take money for a promise to act in a certain way." Id.

> Orenuga attempts to avoid Brewster by pointing to United States v. Gatling, 96 F.3d 1511 (D.C.Cir. 1996), where this court stated that an essential feature of bribery is that it "implies a quid pro quo." Id. at 1522. Contrary to Orenuga's suggestion, however, Gatling did not hold that the quid pro quo must be fully executed for the act to be considered a bribe. Rather, in distinguishing between a "bribe" and an "illegal gratuity," the court noted merely that a bribe is consummated when "the defendant accepts money with the specific intent of performing an official act in return." Id. (emphasis added). Gatling is consistent with Brewster, as is the court's earlier decision in United States v. White, 887 F.2d 267, 272 (D.C.Cir.1989).

Orenuga, 430 F.3d at 1166.

The court of appeals was not indicating that it is a defense to a charge of bribery to show that the official act for which the bribe is given would have been performed by the bribed official in any event.  The Supreme Court has so stated in City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365 (1991):

> A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid.  (That is frequently the defense asserted to a criminal bribery charge—and though it is never valid in law, see, e.g., United States v. Jannotti, 673 F.2d 578, 601 (CA3) (en banc), cert. denied, 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982), it is often plausible in fact.)

Id. at 377.  Accord United States v. Miller, 340 F.2d 421, 424 (4th Cir. 1965); United States v. Labovitz, 251 F.2d 393, 394 (3d Cir. 1958).  See also United States v. Reeves, 892 F.2d 1223, 1226 (5th Cir. 1990) (same rule as to extortion).

The crime is consummated when the agreement to take the bribe is consummated. Whether the bribed official performs the act is irrelevant and, *a fortiori*, the fact that other public officials would and should have performed that act to which the bribe taker was clearly entitled cannot possibly negate the bribe taker's guilt.  Accordingly, the government is not obliged to provide Agrawal with the information he seeks.

## CONCLUSION

An Order accompanies this Memorandum Opinion.


_____/S/_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

Dated: August 19, 2008

9