IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Criminal Case No 1:06-cr-00249-PLF |
| ) | |
| MICHAEL JOHN O'KEEFE, SR. and ) | |
| SUNIL AGRAWAL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MR. AGRAWAL'S
THIRD MOTION TO COMPEL DISCOVERY (AMENDED)**

In the original Indictment, the government charges Mr. Agrawal with three felony offenses for allegedly giving things of value to Mr. O'Keefe in return for performance of an "official act," that is *scheduling* expedited visa interview appointments for STS Jewels, Inc. ("STS Jewels") employees at Toronto consulate. In the Superseding Indictment, the government repeats that same charge but also charges Mr. Agrawal with giving things of value to Mr. O'Keefe in return for a second "official act," that is "the *issuance* of visas to STS Jewels employees." *See, e.g.*, Superseding Indictment, Count 2 (emphasis added).

Despite alleging that Mr. O'Keefe *issued* visas in exchange for things of value, however, the government does not allege that the visas were improperly issued, that the STS Jewels employees were not eligible for the visas, or that the visas should not have been granted. In other words, the government does not allege that visas were procured fraudulently. *See, e.g.*, 4/4/07 Ltr. from B. Johnson [Docket No. 85, Ex.1]. Nor does the government deny that the consulate would have issued visas to the STS employees in the ordinary course of business (regardless of which consular officer conducted the interviews). These facts negate any

inference that Mr. Agrawal bribed Mr. O'Keefe to *issue* visas to his employees. *See United States* v. *Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996); *see also* Rule 15 Hr'g Tr. at 20-21 (Sept. 12, 2007).[1]

To disprove the Superseding Indictment's new bribery theory—*i.e.*, that Mr. Agrawal gave things of value to Mr. O'Keefe to validly *issue* visas—Mr. Agrawal made several discovery requests of the government. Because the government has refused to respond to most of his requests, Mr. Agrawal now moves the Court for an order compelling production.

## I.    BACKGROUND

### A.    Mr. Agrawal's Requests

On April 4, 2008, Mr. Agrawal made six document requests covering three main categories of information: (1) State Department documents concerning visa applications and visas issued to the twenty-one STS employees, wherever or whenever issued; (2) post-visa issuance State Department analysis, emails, or other documents concerning the twenty-one STS employees; and (3) documents in the possession of United States Citizenship and Immigration Services ("CIS") concerning the work authorizations or permanent residence status (*e.g.*, H-1, L-1, Green Cards) of the twenty-one STS employees. *See* 4/4/08 Ltr. to B. Johnson (**Ex. 1**) (filed

---

[1] THE MAGISTRATE JUDGE: So you're going to say, to be consistent, that when you rest and the defense begins to present evidence that tends to [undercut the inference of a *quid pro quo*], your going to object to the materiality of that testimony before Judge Friedman?

MS. CHEUNG: Yes, Your Honor…. [W]e don't feel that that is at all relevant to the charges and we would move in limine to prevent them from making those type of arguments. Because, for instance, what I think the defense would like to do is to get one of these individuals up there, "Did you not grant an expedited interview to a corporate or a celebrity figure on such and such date? "Yes, I did." What does that prove and how does that go to whether or not Mr. O'Keefe both scheduled an expedited interview for one of Mr. Agrawal's employees ….

THE MAGISTRATE JUDGE: . . . . [I]t would purport to negate the notion that [what] he was doing was out of the ordinary. If it is ordinary, then the jury can deduce that since it was ordinary they may not deduce therefrom that it was done with an evil intention. If the same thing is done for everyone, and what these gentlemen did is not exceptional, they're not guilty. Isn't that true?

Hr'g Tr. at 20-21 (Sept 12, 2007).

under seal). To facilitate the location of responsive materials, Mr. Agrawal prepared a chart that listed the twenty-one STS employees, approximate dates of known visa applications, and the respective application posts. *See id.* Mr. Agrawal noted that the government need not re-produce materials that were previously produced. *See id.* n.1.

### B. The Government's Response

On April 30, 2008, the government responded to Mr. Agrawal's letter:

> [T]he government does not believe that applications and documents related to applications for visas by STS Jewels-affiliated persons at posts other than the Toronto consulate during the time frame specified in the superseding indictment are relevant or material to this case.
>
> …. Nonetheless, the government will provide to the defendant, subject to a protective order, a printout of the Consolidated Computer Database ("CCD") for the requested visa applications. These CCD printouts will provide, among other things, information about the date and location visas were issued. The government will further stipulate at trial, if the Court later makes a determination of the relevancy and admissibility of the evidence at trial, that the visas were previously or subsequently issued by the U.S. Department of State for the STS Jewels-affiliated persons and confirm the date and location of the issuance….
>
> [T]he government does not believe that information regarding "post-visa issuance [*i.e.*, post-Indictment] Department of State e-mails, communications, memoranda, analyses or other documents concerning or mentioning any of the STS Jewels-affiliated individuals referenced above is relevant or material.
>
> The government will not provide work authorization applications / materials submitted to the U.S. Citizenship and Immigration Services…. Documents or records of petitions for work eligibility are outside the scope of the charges and are not relevant or material to the instant matter….

4/30/08 Ltr. from B. Johnson (**Ex. 2**).

On May 16, 2008, the government provided Mr. Agrawal with a redacted copy of the CCD printouts.

3

## II.   ARGUMENT

### A.   Legal Standard

The prosecution has an affirmative duty to disclose "evidence favorable to the accused." *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963); *United States* v. *Agurs*, 427 U.S. 97 (1976). "The only question before (and even during) trial is whether the evidence at issue may be 'favorable to the accused'; if so, it must be disclosed without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *United States* v. *Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). Likewise, upon request, the government must disclose evidence that is "material to preparing the defense" or intended by "the government. . . [for] use . . . in its case-in-chief." Fed. R. Crim. P. 16(a)(1)(E); *see United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (the "materiality standard normally is not a heavy burden"); *United States v. Safavian*, 233 F.R.D. 12, 15 (D.D.C. 2005) (Rule 16 "provide[s] a criminal defendant the widest possible opportunity to inspect and receive materials … as may aid him in presenting his side of the case"). This Court has held that evidence negating or undermining the specific intent required by a criminal offense is material to the defense. *See United States v. Libby*, 429 F. Supp. 2d 1, 11-16 (D.D.C. 2006); *see also United States v. Poindexter*, 727 F. Supp. 1470, 1475 (D.D.C. 1989).

### B.   The Information Requested Is Favorable to the Accused Because It Negates the Specific Intent Required by the Bribery Statute

It goes without saying that no one would bribe a public official to do something that will occur anyway. *See United States* v. *Gatling*, 96 F.3d 1511, 1522 (D.C. Cir. 1996) (quoting *United States* v. *Campbell*, 685 F.2d 141, 148 (D.C. Cir. 1982)) ("[p]ayments to a public official for acts that would have been performed in any event ... are probably [not] bribes"). That is a concept inherent in the crime of bribery—*i.e.*, that a bribe is used to induce acts that would not otherwise occur. *See, e.g.*, *See United States* v. *Sun-Diamond Growers*, 526

4

U.S. 398, 404-05 (1999); *United States* v. *Brewster*, 506 F.2d 66, 72 (D.C. Cir. 1974) ("the briber is the *mover or producer* of the official act").

It is indisputable that the same twenty-one STS Jewels employees identified in the Indictment received visas both *before* 2004 and *after* August 2006 (*i.e.*, relevant time period under the Indictment), that these visas were issued by many different consular officers at many different posts around the world, and that a substantial number of the STS Jewels employees identified in the Indictment received their permanent resident (green) card *after* the original Indictment was handed down. Moreover, because the STS Jewels employees' visas were petition-based (*e.g.*, H-1, L-1), a consular officer cannot refuse to issue a visa except in very limited circumstances—none of which apply here. Thus, the requested documents and information will entirely disprove the Superseding Indictment's new bribery-for-visas theory.[2]

---

[2] Authorization to work in the United States under H-1B non-immigrant status involves two separate processes: (1) H-1B classification, adjudicated by Citizenship and Immigration Services ("CIS"), and (2) issuance of the H-1B visa, or visa stamp, issued at a consular post. Upon favorable review of the petition for H-1B classification, CIS issues an H-1B approval notice (Form I-797) that makes the employee eligible to work for the U.S. petitioner company.

The Department of State H-1B visa stamp that is placed in an employee's passport is not required for work *per se*. Instead, the H-1B visa stamp is simply a travel document that the foreign national must present for admission into the United States, whether that person is entering the United States for the first time or after traveling abroad. Although an employee's H-1B status may be valid for several years, his or her H-1B visa may be valid for a shorter period. Most foreign nationals need a valid, unexpired H-1B visa every time they seek to enter the United States in H-1B status. Thus, an employee with an expired visa will have to secure a new H-1B visa if that employee intends to leave the United States and then re-enter. However, when an H-1B visa expires, it does not affect the foreign national's ability to work in the United States.

CIS approval of H-1B status is *prima facie* evidence of approvability for a visa. A consular officer does not have any basis to refuse issuance of a visa if the applicant (1) has an approved H-1B petition from CIS (Form I-797); (2) is not subject to any grounds of inadmissibility, including criminal convictions, health issues, security problems, or past immigration violations; and (3) has presented all necessary forms and documentation for the visa. *See* **9 FAM 41.53 N2.2:**

> An approved Form I-129, Petition for a Nonimmigrant Worker, or evidence that the H petition has been approved (an acceptable Form I-797, Notice of Action … or telegraphic email, or telephonic notification from Department of Homeland Security (DHS) or the Department) is, in itself, to be considered by consular officers as prima facie evidence that the requirements for H classification which are examined in the petition process have been met. Consular officers do not have the authority to question the approval of H petitions without specific evidence, unavailable to DHS at

(continued)

### 1. Pre- and Post-Indictment Issuance of Visas

Instead of responding to defendants requests concerning visa application and issuance documents, the government produced *redacted* CCD printouts and offered to stipulate "that the visas were previously or subsequently issued by the U.S. Department of State for the STS Jewels-affiliated persons." 4/30/08 Ltr. from B. Johnson (**Ex. 2**). In light of the government's stipulation, Mr. Agrawal will accept *unredacted* CCD printouts in response to the first category of requests. *See* 4/4/08 Ltr. to B. Johnson (**Ex. 1**). Mr. Agrawal therefore requests that the Court compel the government to produce the CCD printouts in unredacted form—*i.e.*, with readable information about the issuing officers. The government has no basis for redacting this information, especially in light of the governing protective order. *See, e.g.*, *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (evidence is material "as long as there is a strong indication that it will play an important role in … aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal") (internal quotations omitted).

### 2. Post-Indictment Analyses/Emails Regarding Visa Applications

The second category of documents requested by Mr. Agrawal (Request No. 3) concern any post-Indictment visa issuance analysis, email, communications, memoranda, or other documents prepared or received by Toronto consulate or State Department personnel. *See* 4/4/08 Ltr. to B. Johnson, at p.3 (**Ex. 1**). The government flatly refuses to produce these

---

the time of petition approval, that the beneficiary may not be entitled to status. The large majority of approved H petitions are valid, and involve bona fide establishments, relationships, and individual qualifications that conform to the DHS regulations in effect at the time the H petition was filed.

In this case, CIS had legally authorized and approved each of the visa applicants to work for Mr. Agrawal's company in the United States long before they went to the consulate. Thus, consular officers had no basis to deny a visa to a CIS-approved applicant absent legitimate security or admissibility concerns. There is no allegation—and indeed there can be none—that the STS Jewels employees raised legitimate security or admissibility concerns.

documents because the government again has unilaterally determined that they are not relevant. *See* 4/30/08 Ltr. from B. Johnson, at 2 (**Ex. 2**).

The government is wrong. Evidence that disproves the *quid pro quo* alleged in the Superseding Indictment is relevant. In this case, State Department personnel reviewed the applications and visa issuances for the twenty-one STS Jewels employees *after* the Indictment was handed down, presumably to indentify anything improper with respect to the visas. *See, e.g.*, Gov't Opp., Attach. A [Docket No. 86]. Those post-Indictment analyses are the best and most direct evidence regarding whether the visas were issued properly and would have been issued—regardless of which consular official was involved.[3] Indeed, there can be no stronger exculpatory evidence on this point than government admissions that the visas were validly issued.

Moreover, the government continues to assert that issuance of the visas was "far from a foregone conclusion." *See* Gov't Opp. at 9 and Attach. A [Docket No. 86]. That argument makes clear why the discovery sought is relevant. To the extent that issuance of the visas were not "foregone conclusions," the government is contending that Mr. O'Keefe did "something" (allegedly in response to bribes) to cause the issuance of the visas. Evidence that the issuance of the visas was "a foregone conclusion—*i.e.*, that it was entirely proper, routine and inconsequential—is therefore undoubtedly relevant. The government cannot continue to come to this Court and argue that the issuance of the visas was infected by corruption and bribery, while withholding evidence that any consular official would have issued these visas without blinking an eye.

---

[3] Of course, in this case, there is a serious question about whether such analyses still exist because of the government's failure to preserve material evidence. See Joint Motion to Dismiss (June 6, 2008) [Docket No. 118].

7

### 3. Green Cards and CIS Work Authorizations

The third category of documents requested by Mr. Agrawal (Request Nos. 4-5) involve documents (including for example background checks, correspondence, verifications, emails, etc.) concerning work authorizations or Green Card approved by CIS. *See* 4/4/08 Ltr. to B. Johnson, at 3-4 (**Ex. 1**). The government refused to produce these documents because its considers them "not relevant or material to the instant matter." *See* 4/30/08 Ltr. from B. Johnson, at 2 (**Ex. 2**).

The government's unilateral ruling on relevance is mistaken. Evidence concerning CIS vetting, approval, and issuance of permanent residence cards—which are *prima facie* evidence of visa approvability—completely undermine the bribery-for-visa allegations. *See supra* note 2. Among other things, the requested documents will show that a second U.S. government agency determined, after extensive review, that the STS Jewels employees were eligible, authorized, and entitled to enter and work in the United States. This information is highly exculpatory because the State Department relies on CIS's determinations. *See id.*

### III. CONCLUSION

For the foregoing reasons, Mr. Agrawal respectfully requests that the Court compel the government to produce the requested documents.

Dated: June 13, 2008                    Respectfully submitted

                                                                  _____/s/_____
Thomas C. Green (D.C. Bar #14998)
Mark D. Hopson (D.C. Bar #394338)
David J. Ludlow (D.C. Bar #489136)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, DC 20005
202-736-8000