IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | CRIMINAL NO. 1:06-CR-00249 (PLF/JMF) |
| : | |
| v. : | |
| : | |
| MICHAEL JOHN O'KEEFE, Sr., : | |
| SUNIL AGRAWAL, : | |
| : | |
| Defendants : | |

**GOVERNMENT'S RESPONSE TO MAGISTRATE JUDGE FACCIOLA'S
REPORT AND RECOMMENDATION AND DEFENDANTS' RESPONSE**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this response to the Report and Recommendation of Magistrate Judge John M. Facciola regarding Defendants' Joint Motion to Dismiss [Docket No.115] and to Defendants' Response to Magistrate Judge Facciola's Report and Recommendations [Docket No. 132]. On August 19, 2008, Magistrate Judge Facciola issued a Report and Recommendation (hereinafter "Report" [Docket No. 128]) to Judge Paul L. Friedman concluding that (1) the defendants' joint motion to dismiss should be denied insofar as it claims a violation of due process of law, and (2) that a hearing be held before him on the defendants' contention that the government failed to comply with Judge Friedman's April 27, 2007, discovery order (United States v. O'Keefe, No. 06-CR-249, 2007 WL 1239204 (D.D.C. Apr. 27, 2007), warranting the imposition of sanctions. See Report at 14. On August 21, 2008, the defendants filed a response to the Report [Docket No. 132], requesting an evidentiary hearing and reconsideration of their motion to dismiss while reserving the right to file objections until after the hearing.

In recommending that a hearing be conducted on certain issues related to the search for

and production of electronic documents from the U.S. Consulate in Toronto, Canada, pursuant to Judge Friedman's April 27, 2007, discovery order, Magistrate Judge Facciola's Report was premised on the parties' understanding that electronically stored information allegedly not produced by the government was not preserved in any way and therefore not recoverable.  See Report at 3.  As set forth in the government's August 26, 2008, Notice to the Court [Docket No. 136], the government recently learned that the Toronto consulate preserved on May 29, 2007, its original electronic e-mail search conducted in response to Judge Friedman's April 27, 2007, discovery order.  Consequently, it is now possible to conduct searches on these saved e-mail accounts as they existed on May 29, 2007.  In addition, the Toronto consulate also preserved electronic documents as they existed on its shared drives on the following two dates:  September 28, 2005, and November 2, 2007.  Thus, it is now possible to search these saved files.[1]

      The government agrees with the Report's recommendation that the defendants' joint motion to dismiss should be denied.  The government, however, respectfully disagrees with certain findings and recommendations set forth in the Report and states as follows:

---

[1] The electronic searches conducted by staff of the Toronto consulate in response to the April 27, 2007, discovery order were done around May 2007.  The government has learned that individual e-mail accounts from May 29, 2007, were saved on that date but not data from the consulate's shared drives.  Therefore, based upon the government's current knowledge, there is a five month period (i.e., from May 2007 until November 2007) in which there apparently exists no preservation of items on the shared file.  However, items in the shared directory in May 2007 may have still existed on the server when the shared drives were saved on November 2, 2007. The government is engaged in ongoing efforts to conclusively determine whether any other electronic data responsive to the April 27, 2007, discovery order has been preserved by the Toronto consulate.

## I.  A HEARING IS NOT NECESSARY AT THIS TIME.

The Report recommends that a hearing should be held in order to address the following discovery issues: 1) the practicability of computer imaging and the use of the Computer Investigations and Forensics Branch ("CIF") of the U.S. Department of State Diplomatic Security Service; 2) the consistency of expert testimony regarding keyword searches and the Federal Rules of Evidence and the merit of such testimony; and 3) the validity of four "accusations of perjury" by the defendants against Peggy L. Petrovich, the Visa Unit Chief at the Toronto consulate.  See Report at 9-13.   Defendants have noticed their intent to subpoena former and current Toronto consulate employees to compel their testimony at the hearing.  See Defendants' Response to Report and Recommendations [Docket No. 132] at ¶ 5.

The government respectfully submits that no hearing is called for at this time and objects to the subpoenaing of any Toronto consulate employee by the defense for purposes of compelling his or her testimony at such an evidentiary discovery hearing.  In this Response, the government hereby adopts and incorporates the facts set forth and arguments made in Government's Opposition to Defendants' Motion to Dismiss [Docket No. 122].

The Report's recommendation for a hearing on differences in methodology and accusations of perjury rests entirely upon the premise that any alleged "lost evidence" was gone and could not be remedied.  See Report at 9.  The existence of saved electronic files negates this premise, as well as any alleged harm suffered by the defendants.  In light of the recent discovery of the existence of saved files, the government is currently in the process of accounting for the discovery of these saved files and confirming the existence of any other saved electronic data. Moreover, the government is in communication with the defendants regarding arranging access

to these saved files. Any basis for a hearing is therefore not ripe at this time.

## II. CLARIFICATIONS AND OBJECTIONS TO REPORT

### A. SCOPE OF INDICTED CONDUCT

As an initial matter, the Report cites to the Court's April 27, 2007, discovery order and states that the gravamen of the superseding indictment "is that defendant Michael John O'Keefe . . . accepted as bribes gifts from defendant Sunil Agrawal to expedite the visa applications of the employees of his company, STS Jewels, Inc." Id. at 1. The superseding indictment, which was returned on March 25, 2008, alleges that Defendant O'Keefe received personal benefits in exchange for both expediting the handling of visa interview appointments and issuing visas to benefit Defendant Agrawal and his business, and that Defendant Agrawal obtained expedited visa interview appointments and the issuance of visas for his employees and persons sponsored by STS Jewels, thereby saving him, his business and his employees, time and money.[2] See Superseding Indictment [Docket No. 98] at Counts 2 & 3, and Count 1, ¶ 9A-C.

### B. DISCOVERY

#### i. Imaging of Computers

The Report states that the CIF would most likely have considered imaging the computers had it been deployed to conduct the searches at the six consulates implicated by the April 27, 2007, discovery order. See Report at 10. The Report further recommends that a hearing be

---

[2] As stated in the government's Memorandum Outlining Changes from Original Indictment to Superseding Indictment [Docket No. 99 at ¶ 3], the charging language in the superseding indictment was modified to clarify any alleged ambiguity regarding the scope of the defendants' conduct. The government has always maintained since the original indictment was returned on August 18, 2006, that Defendant O'Keefe accepted bribes from Defendant Agrawal for expediting visa appointments and for issuing visas. See, e.g., Original Indictment [Docket No. 2] at Counts 2 & 3, and Count 1, ¶ 9A-B.

scheduled in order to explore whether imaging was as practical an option as believed. See id. at 11. As stated above, the government recently learned that some type of imaging was done to capture electronic data on three separate dates, and searches of these saved files using new or additional search terms can now be conducted.

### ii. Keywords

The Report also recommends that a hearing be held to determine whether soliciting testimony regarding whether keywords used in a search would in fact produce what was sought was consistent with Rule 703 of the Federal Rules of Evidence, as well as whether such expert testimony would be meritorious. See id. at 12. In light of the existence of saved electronic files, such a discussion is premature.

### iii. Statements of Peggy L. Petrovich

In their motion to dismiss, the defendants made several allegations as to the statements made by Ms. Petrovich. While acknowledging that "the government counters each of the claims," the Report states, "the trading of accusations and responses by counsel is no substitute for an evidentiary hearing at which witnesses testify under oath subject to cross examination." Id. at 13. While intentional misstatements to the Court are serious enough to warrant a hearing, this is not the case here. Ms. Petrovich executed three declarations in which she attempted to explain and clarify to the best of her ability the search process and how her office endeavored to comply with the April 27, 2007, discovery order. The four "accusations of perjury" outlined in the Report are without substance and holding an evidentiary hearing for Ms. Petrovich to make the same assertions made in her declarations under oath is not necessary.

Ms. Petrovich stated that she conducted or directed searches for information in shared

5

electronic mailboxes at the Toronto consulate. Ms. Petrovich's assertion that she conducted or directed searches for information in shared mailboxes is in no way contradicted by her fellow employee, John Long, who admitted that he never searched any of the shared mailboxes. In other words, the fact that Mr. Long never searched any of the shared mailboxes does not contradict the fact that Ms. Petrovich and others undertook such searches. Moreover, the very discovery provided to the defendants – that is, e-mails from shared mailboxes[3] – incontrovertibly supports Ms. Petrovich's assertion.

Similarly, Ms. Petrovich stated that she personally searched for "stand-alone documents" (i.e., documents from word processing or other software), which were produced to the defendants by the government, and either personally searched or directed searches on shared drives, personal drives, and hard drives. These assertions are in no way contradicted by Mr. Long, who stated that he was not involved in those searches. Along the same lines, Ms. Petrovich's electronic search of stand-alone documents only yielded Standard Operating Procedures and the NIV Schedule Calendar. The recovery of these documents occurred through Ms. Petrovich's "manual" search of where she believed stand-alone documents would be and not through the use of keyword searches. Consequently, it is undisputed that no search terms were used to find these documents.

---

[3] See Government's Opposition to Defendants' Motion to Dismiss [Docket No. 112] at 25 & n.17 and Exhibit 3 filed under seal.

WHEREFORE, for the foregoing reasons, the United States respectfully requests that the Court follow the recommendation to deny the defendants' motion to dismiss and reject the recommendation that a hearing be held on alleged discovery violations.

>Respectfully submitted,
>
>Jeffrey A. Taylor
>UNITED STATES ATTORNEY
>D.C. Bar Number 498610
>
>
>By:     _____/S/_____
>Brenda J. Johnson
>Denise Cheung
>Assistant United States Attorneys
>D.C. Bar No. 370737
>D.C. Bar No. 451714
>202/353-4154
>202/ 307-2845
>National Security Section
>United States Attorney's Office
>555 4th Street, N.W. – 11th floor
>Washington, D.C.  20530
>202/307-6059 fax